# LARKINS & MOORE *vs.* ECKWURZEL.

[CONVERSION OF CHATTELS.]

1 *Conversion of chattles ; misjoinder of defendants.*—While it is clear, that he who sells, and he who buys the chattels of another, which has been wrongfully converted, may both be sued *separately*, for a conversion ; yet, where the purchaser buys, *bona fide*, and without a knowledge of the conversion by the seller, it seems to be the better opinion, that they can not be sued *jointly.*

APPEAL from the City Court of Montgomery.
Tried before Hon. T. M. ARRINGTON.

THIS was an action for conversion of chattles brought by appellee against appellants. Otto G. Eckwurzel, (appellee,) a confectioner doing business in the city of Montgomery, ordered certain invoices of goods, suitable to his business, from two firms, one at New York, and the other at Baltimore. These goods were shipped by way of Savannah, and received and deposited in due time at the depot of the Montgomery & West Point Railroad in Montgomery ; and the bills of lading for each parcel were received by mail by said Eckwurzel, together with invoices of the goods. These invoices, soon after they were received, were taken from his store without the knowledge, or consent of appellee. There was evidence conducing to show that defendant Moore, who was under liability on a certain bill of exchange as accommodation acceptor for said appellee, had obtained possession of these goods from the railroad depot, without the knowledge or consent of appellee, and had sold them to the appellant, Larkins, in satisfaction of the bill of exchange upon which he was accommodation acceptor as aforesaid, and which said Larkins held. There was also evidence conducing to show that appellant Moore had obtained these goods from the railroad depot, and appropriated them to the satisfaction of the said bill of exchange, with the consent of appellee. There was much other evidence in the

case, but it relates to questions upon which the court does not pass.

The court below charged the jury : " That if they believed from the evidence, that the goods were the property of the plaintiff, and were wrongfully taken by the defendant Moore, without the knowledge, authority, or consent of the plaintiff, and were afterwards sold by the defendant Moore, to the defendant Larkins, without the knowledge, authority, or consent of the plaintiff, and if this occurred before the commencement of the suit, the defendants were jointly liable to the plaintiff." ·

And further : " That the fact that the defendant Larkins had no knowledge of the claim of the plaintiff to the goods, until after he had sold them to a third person, constituted no defense to this action, if the goods were really the property of the plaintiff, and he had not, in any manner, consented to, or authorized any sale or disposition of them." To these charges severally the defendants exeepted.

The jury rendered a verdict against both the defendants, on which judgment was rendered for $1,332 dollars ; from which they appealed, and assign for error the charges given as above.

WATTS & TROY, for appellants.
RICE, SEMPLE & GOLDTHWAITE, *contra*.

BYRD, J.—The main question in this case is, whether upon the facts shown by the record, the action is maintainable against the appellants *jointly* ? There can be no doubt that under the law, and the facts in evidence, that the appellants are severally liable in trover.—*Lee v. Matthews*, 10 Ala. 682 ; *Conner & Johnson v. Allen & Reynolds*, 33 ib. 516. No case has been found by us, none brought to our notice by counsel, in which a joint action in trover, has been brought against the seller and buyer of a chattel, where the latter was a purchaser *bona fide*.

In the elementary works, no reference is made to the joint liability in trover of a seller and buyer, to the owner of a chattel. The reference made to the joint liability of parties in this form of action, are uniformly, if not univer-

sally, to parties who participated, in some way, in the original conversion.

In this case, when Moore took possession of the goods, under the evidence, he was liable for the conversion to the owner, and so would all persons who participated in that act have been, severally or jointly, liable with him, whether they knew or had notice of the claim of the owner or not. But as to the joint liability of the original *tort-feaser* and a person to whom he sold the goods without any notice of the claim of the owner, the question is more difficult of solution.

The absence of any case in point, and the failure of the elementary writers to make any reference to such a case, may be looked upon as persuasive to show that in the opinion of the profession, such an action is not maintainable. Upon principle, it would seem unjust to subject a *bona-fide* purchaser from a *tort-feaser*, to a joint suit with him, to the costs and damages which may be recovered in such an action, and to have them fixed upon him as a joint liability with his vendor.

Upon the other hand, if he were sued severally he could give notice to his vendor of the pending of the suit, and require him to defend it. And if there should be a recovery in the suit, his remedy against his vendor would be plain.

While we find no authorities directly in point, we conceive the reasoning employed and the principles announced in the following authorities, will sustain us in holding that the court erred in the charge given to the jury.—*Cope v. Romeyne*, 4 McLean, 384 ; *Gage v. Epperson*, 2 Head, (Tenn.) 669 ; *Whitney v. Slanson*, 30 Barb. 276 ; 3 Dane's Abr. 209, § 11, and page 212, § 28 ; *Babcock v. Gill & Gill*, 10 John. 286 ; *Sherry v. Picken*, 10 Ind. 375 ; *Tallman v. Tarck*, 26 Barb. 167 ; *Garrard v. Pittsburg, &c.*, 29 Penn. Rep. 154 ; *Nicoll v. Glennie, et al.*, 1 Maule & Sel. 588 ; *Glaze v. McMillion*, 7 Porter 280. We do not intend to intimate that no case can arise in which a seller and buyer could be held liable *jointly* in trover.—*White v. Wall*, 40 Maine, 574.

The case of *Nicoll v. Glennie et al., supra,* is more in point that any case we have found, and Lord Ellenborough, in

that case, remarks upon the importance of the question and the absence of authorities upon it. We follow his ruling in that case. The only other questions argued by the counsel for appellants, although they have assigned other matters, relate to the introduction of two bills of lading in evidence by the appellee, and the refusal of the court to allow appellants to introduce secondary evidence of the execution and contents of a receipt alleged to have been given by the appellee. And as upon another trial both parties may improve their evidence on these points, and it will be probably different from that upon the record, we will not pass upon the exceptions reserved by appellants upon the rulings of the court thereon. For the error in the charge of the court, the judgment must be reversed and cause remanded.

JUDGE, J., not sitting.

BYRD, J.—We have carefully examined the record, the application for a re-hearing, and the foregoing opinion ; and, in response to the application, we have come to the conclusion to adhere to that opinion. In the case of *White v. Demary et al.*, 2 N. H. 546 ; (see, also, *Powery v. Sawyer*, 46 Maine, 160 ; *Moody v. Whitney*, 34 ib. 563 ; *Drake v. Barrymore*, 14 John. 166 ; 2 Scam. 448 ; 2 Hill on Torts, 467, § 26 ; *Layman v. Hendrix*, 1 Ala. 212,) the court say, " when an action sounds in tort, and is against more than one person, judgment can not be had against more than one, without evidence of a joint wrong. A separate wrong by each, entitles the sufferer to only a separate action against each." And the court further say, that had the action been *ex contractu*, a neglect of one would have subjected both. " But being *ex-delicto*, the defendants to be all liable, must all have actually perpetrated the wrong, or directed it to be done." The facts of that case are not identical with those of this, but sufficiently so for the application of the principles announced, to the facts of this case.

And in *Hilliard on Torts*, it is said that a person who knowingly receives from another a chattel, which the latter

has wrongfully seized, and afterward, on demand refuses to give it back to the owner, does not thereby become a *joint trespasser*, unless the chattel was seized for his use. "So where A. took and converted the mule of plaintiff and sold it to B.," it was held that the original taking by A. and the detention by B. were separate causes of action.—p. 448.

But it has been held that where a consignee, with power to sell, sells with intent to defraud the consignor, which intent is known to the purchaser, the seller and buyer are jointly liable in trover.— *White v. Wall*, 40 Maine, 574. Which is consistent with the doctrine held by us in the opinion heretofore delivered in this case. And these cases, with those cited heretofore, clearly draw the line of distinction which runs between those cases in which a joint action in trover lies against a buyer and seller, and those in which it does not. In trover against several defendants, all can not be found guilty on the same count, without proof of a joint conversion by all. And if they all join in an act with the intent to deprive the owner of property, or to convert it to the use of one or both, they are jointly liable, whether the act be one of sale and purchase, or of any other character. But the sale by one who has converted the property of another, to an innocent purchaser, can not sustain a joint action, in form *ex-delecto*, against the seller and buyer.

Although all the evidence is not set out, yet enough is set out to show that the charge is erroneous.—*Lackett v. McCord*, 23 Ala. 851 ; *Moore v. Clay*, 24 Ala. 235 ; *Hines, et ux., v. Trautham*, 27 Ala. 359.