# Richmond & Danville Railroad Co. v. Greenwood.

99   501
121   100

99   501
125   348

99   501
136   243

*Action by Passenger against a Railroad Company, for Damages on account of Personal Injuries.*

1. *Liability of defendants as joint tort feasors.*—In an action against two or more defendants, seeking to hold them liable as joint tort feasors, responsible jointly and severally for the resulting injury, the wrong complained of must, in fact, be jointly done by the defendants, or if

[Richmond & Danville R. R. Co. v. Greenwood.]

contributed to by each, a joint purpose must be imputable to each of them.

2. *Judgment against one of two defendants, when sued for the same tort.* Where, in an action for injuries against two railroad companies, the complaint alleges the joint and several liability of the defendants for the result of their separate and distinct, but concurring and co-acting negligence, and the sufficiency of the complaint is not tested by demurrer, but both the defendants plead the general issue, judgment may be properly rendered against one of the defendants and in favor of the other.

3. *Motion to require plaintiff to submit to physical examination ; must be seasonably made.*—A motion to require the plaintiff to submit to a physical examination must be seasonably made; and such motion should not be granted if the result would be an unreasonable postponement of the trial, or if it would necessitate the plaintiff's presence in Alabama, when it appears that he was not reasonably equal to the journey from his home in a distant State.

4. *Struck Jury.*—When, in an action against two defendants, each demands a struck jury, under section 2752 of the Code, they are not entitled to separate panels; but a list containing the names of 24 jurors in attendance upon court must be furnished to the parties defendant.

5. *Objection to answers to interrogatories.*—When depositions of witnesses are taken on interrogatories, and no objections are filed to such interrogatories, objections to the answers, if responsive, come too late when raised during the trial, and are properly overruled.

6. *Punitive damages.*—In an action against two railroad companies for injuries caused by a collision, at a point where the two roads intersect, when there is evidence tending to show that the speed of one of the trains at the time of the accident was 30 or 40 miles per hour, that such train was not brought to a full stop near the crossing, as required by statute, never slackened its speed when it approached such crossing, and that the engines of both trains were in plain view when the rapidly moving engine was 150 feet away from the crossing, it is open to the jury to conclude that there was wantonness, wilfullness and reckless indifference to probable consequences on the part of the engineer on such engine, and the question of punitive damages is properly submitted to the jury.

7. *Same; actual knowledge of danger not necessary to recover such damages.*—If an engineer, who knows the location of the crossing of his road by another road, and that the physical conformation of the locality prevents his seeing trains on the other road, until too close to prevent a collision, unless he has complied with the statute requiring all trains to stop within 100 feet of the crossing, and he neglects to stop as required by statute, runs his train upon the crossing without even slackening its speed of thirty or forty miles per hour, and a collision ensues, he is guilty of such wanton and reckless conduct as imposes upon the railroad the liability for punitive damages, notwithstanding he may have had no *actual knowledge* of the approach of the train on the other road.

8. *Care and diligence required by railroads for passengers.*—The law requires of all railroad companies, and their employees, engaged in the carriage of passengers, the highest degree of care, diligence and skill known to careful, diligent and skillful persons engaged in such business.

9. *Duty of trainmen stopping at crossings.*—Trainmen, after stopping for a crossing, in obedience to the statute, must, before proceeding, make every effort, that the highest degree of care, skill and diligence

requires, to be sure the way is clear and will remain so long enough for the passage of their train over the intersecting road; and this duty is not performed, when, before proceeding, the engineer is only "reasonably sure the way is clear," or has simply "endeavored, in good faith, to ascertain whether or not the way is clear."

10.　*Trainmen's right to assume a compliance with the statute by the employees of an intersecting road.*—A charge that trainmen on one road, who have complied with the statute in approaching a crossing, may assume that trainmen on the intersecting road will also comply therewith, is not objectionable, as ignoring a duty which might have arisen after the train that complied with the statute had started, when given in connection with the further instruction, that the train that stopped had not the right to proceed over the crossing if the circumstances indicated that the other train would not stop.

11.　*Charge invasive of jury's province erroneous.*—In an action against two intersecting railroads for injuries resulting from a collision of trains at their crossing, the alleged negligence being controverted by each, a charge asked by one of the defendants that assumes the negligence of the other, and submits to the jury only whether such negligence was the proximate cause of the injury, is erroneous, as invading the province of the jury.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action brought by the appellee, J. T. Greenwood, against the appellant, the Richmond & Danville Railroad Company, and the Savannah & Western Railroad Company; and sought to recover damages for personal injuries alleged to have been sustained by the plaintiff while a passenger on a train of the Richmond & Danville Railroad Company, by reason of a collision between two trains of the two defendants.

The pleadings are sufficiently stated in the opinion. The undisputed facts, as disclosed by the bill of exceptions, are as follows: On December 24th, 1889, the plaintiff was a passenger on one of the regular passenger trains of the Richmond & Danville Railroad Company, going from Birmingham eastward in the direction of Atlanta, Ga. When about 12 miles east of Birmingham, where the track of the Richmond & Danville road crosses the track of the Savannah & Western road, there was a collision between the passenger train, on which the plaintiff was riding, and a freight train on the Savannah & Western Railroad. Both trains were moving forward with their engines in front of them. The tracks crossed each other at this point at an acute angle. The Savannah & Western train was coming from the west towards Birmingham. The engineer of the passenger train was in his seat on the right of the engine, the fireman was putting coal in the engine, and a flagman, who had gotten on the engine, was sitting in the fireman's seat. The en-

gineer and fireman of the freight engine were in their proper seats. The collision occurred in the day time. There was an embankment on the west or north side of the R. & D. track intervening between the two tracks and obstructing the view to some extent. This embankment was about 30 or 40 feet high at a distance of 200 or 300 feet up the R. & D. track, and gradually declined to a distance of about 11 feet high as it approached the crossing. There was a stop-post within a few feet of the R. & D. track, and about 100 or more feet from the crossing, to indicate where trains should stop on approaching said crossing. There was a similar stop-post near the S. & W. track, about 75 or 80 feet from the crossing. No person on the R. & D. engine actually saw or heard the approaching S. & W. train, until after the latter train had approached so near the track of the R. & D. railroad that the said R. & D. engine could not be stopped by the use of all possible means for that purpose.

The testimony for the plaintiff tended to show that the engineer on the R. & D. train had blown the whistle for the crossing, but did not come to a stop, or slacken the speed of the train, which was running at the rate of 35 or 40 miles per hour. The testimony for the defendant was in direct conflict with this portion of the plaintiff's evidence, and tended to show that the engineer did stop for the crossing, after blowing his whistle therefor, and that the speed of the train did not exceed 10 or 12 miles per hour.

The plaintiff was a resident of Greenville, in Hunt county, Texas, and was not present at the trial, but his testimony was taken by deposition. The other tendencies of the evidence are sufficiently shown in the opinion.

The trial of the cause was begun for February 5th, 1892. On January 28th, 1892 the R. & D. R. R. Co. entered on the motion docket a motion "to grant an order directing and requiring the plaintiff in this case to appear in person at the trial of the case, and to submit his person to a physical examination by medical experts to be nominated by the court, or selected by the parties or their attorneys." The grounds of the motion were, that the plaintiff was a resident citizen of Texas and sues to recover a large sum of money for personal injuries alleged to have been sustained by him while on the defendant's train; that he claims to have sustained permanent injuries in his head, spine, back and limbs, internal organs and nervous system; and that he has taken steps to have his own deposition taken, and the depositions of a large number of witnesses who reside in Georgia and

[Richmond & Danville R. R. Co. v. Greenwood.]

Texas, so that defendants will be deprived of the opportunity to examine plaintiff and his witnesses face to face, and "will not be able to view or to exhibit to the jury the person of the plaintiff, so as to determine, with any degree of certainty, the truth or falsity of plaintiff's claim of permanent injury, or the truth or falsity of the testimony of plaintiff or his witnesses," and hence if the plaintiff does not appear at the trial in person gross injustice may be done to the defendant. In support of this motion the defendant, the Richmond & Danville Railroad Company, in open court, offered to defray all the necessary and actual expenses arising from the granting of said motion. . On the hearing of said motion the court overruled the same, and the said defendant duly excepted.

When the cause was called for trial, one of the regular juries being in the jury box, each of the defendants, separately and severally, demanded the right to have a struck jury, as provided by section 2752 of the Code of 1886. There were 24 regular jurors in attendance upon court. The sheriff furnished each of the defendants a list of the 24 jurors in attendance, and thereupon each of the defendants separately demanded that six more jurors be empanelled and added to the 24 jurors, from which to secure a struck jury. The court refused the demand to add the six jurors, and the defendants then and there separately excepted. Each defendant then separately objected to strike from the list of 24 jurors so furnished, and assigned as its reason therefor, "that it was impracticable for each separate defendant to strike six men from said list of 24.

It is not deemed necessary to set out in detail all the rulings upon the evidence, since, as is stated in the opinion, they are not urged as grounds of reversal by counsel.

The Richmond & Danville Railroad Company separately excepted to the italicized portions of the following excerpts from the court's general oral charge: 1. "Now you will notice, gentlemen of the jury, that there are two defendants here, and the plaintiff claims that both of them are liable, but if both of them are guilty of negligence, as I shall explain to you, then both of them are liable. *If one was guilty of negligence and the other was not, then the company that is guilty of negligence is liable, and the other is not.*" 2. "When the tracks of two railroad companies cross each other, the engineers and conductors must cause their trains to come to a full stop within 100 feet of said crossing, and not proceed until they know the way to be clear; trains on the railroad having the older right of way being entitled to cross first.

*Now you will see from that, that if both roads had observed these precautions, it would be impossible for any collision to occur; each one coming up to within 100 feet of the crossing would stop and see that the way was clear and then proceed, it would be impossible for them to collide at the crossing. It would not be impossible, however, for a collision to occur when one road observes these precautions and the other road does not. The managers, engineers and conductors of trains are not required to do impossible things. What they are required to do is to exercise that reasonable degree of care that men in their situations, prudently conducting railroads and governed by this statute, would conduct themselves under the circumstances. For instance, if one train comes up to a point which is within 100 feet of the crossing and observes these precautions, and sees whether or not the way is clear, and there is no train in such distance, and if it then proceeds along after having stopped, and another train should come rushing along, not having observed these precautions, and going so swiftly, or perhaps around a curve, so that its approach could not have been seen by this first train, and a collision occurred, why then, you see that the first train has been guilty of no negligence, because it exercised all the care that it could have exercised. They stopped and saw that the way was clear, and the negligence would be on the other train, that did not observe these precautions, having caused the collision. Now one road has a right to suppose in its conduct that another road is going to observe the proper precautions. So then I mention that to you to show you that one road may be liable and another may not be liable.''* 3. "You will consider, whether or not either of the roads were guilty of any negligence. If neither of them were guilty of any negligence, why then there could be no recovery. *If one of them was guilty of negligence, and the other was not, why then there should be no recovery against the one that was not guilty of the negligence.''* 4. *"If both roads were guilty of negligence that contributed to the plaintiff's injury, then there should be but one verdict by you against both of the roads.''* 5. *"If you believe that the plaintiff is entitled to compensatory damages, then you are to consider whether or not you will give him what is called vindictive damages, or punitive damages, which means punishment against the one they are imposed upon—are assessed for that purpose. They are in the nature of a punishment.''* 6. "Now if simple negligence is proven and only simple negligence is proven, then the damages could only be compensatory, *but if willful neglect, or gross neglect is proven, then it is left to your judgment and discretion to say whether or not you will inflict punitive damages, that is damages to punish the defend-*

[Richmond & Danville R. R. Co. v. Greenwood.]

*ant or defendants for the willful disregard of the safety of other people.*"

The Richmond and Danville Railroad Company requested the court give the following written charges, and separately excepted to the court's refusal to give each of them as asked. (1.) "There is no evidence in the case that the defendant, the Richmond & Danville Railroad Company, or its servants, were guilty of any wanton, reckless or intentional wrong, by which injury was inflicted upon the plaintiff." (2.) "If the jury believe the evidence they must find for the defendant." (3.) "If you believe the evidence in the case you can not assess any punitive damages against the defendant, the Richmond & Danville Railroad Company." (5.) "The expression used in the statute relative to the duty of an engineer at a railroad crossing, that he must not proceed 'until he knows the way to be clear,' does not mean that the engineer, in all cases, must know the way to be clear with absolute certainty. It only means that the engineer must be reasonably sure that the way is clear; that is, when the fact and circumstances, existing at the time and within his knowledge, are such as would reasonably induce a prudent person, in like situation, to proceed over the crossing." (6.) "The way over a railroad crossing is clear, within the meaning of this statute, if there is no obstruction on the crossing, or within actual sight or hearing of the engineer, before he proceeds to cross, if he has stopped the engine and attached train within one hundred feet of the crossing, and endeavored, in good faith, to ascertain whether or not the way is clear." (8.) "The defendant's engineer must have known that a train on the other defendant's road was approaching the crossing, otherwise he would not be guilty of wanton or reckless misconduct." (9.) "Unless the defendant's engineer had actual knowledge of the impending peril, of a collision at the crossing, he would not be guilty of such recklessness as would justify the imposition of punitive damages."

The court, at the request of the Savannah & Western Railroad Company, gave, among others, the following written charges to the jury: (5.) "If the jury shall find from the evidence that the Savannah & Western train, or those in charge of it, were guilty of an unintentional omission of duty, or of simple negligence merely, you can not find a verdict against it under the first and second counts of the complaint." (11.) "If the jury shall find that the proximate cause of the plaintiff's injury was the negligence of the Richmond & Danville Company, this is a circumstance for the jury to consider in de-

termining whether the Savannah & Western Company was guilty of any negligence at all at the time of the collision." To the giving of each of said charges the Richmond & Danville Railroad Company separately excepted.

Upon the jury returning a verdict in favor of the plaintiff against the Richmond & Danville Railroad Company, assessing the plaintiff's damages at $5,000, the Richmond & Danville Railroad Company moved the court to give judgment in its favor, notwithstanding the verdict of the jury, on the grounds, that the cause of action, as stated in the complaint, was based on the joint wrong of both of the defendants, and that the verdict of the jury is in favor of the plaintiff and against the Richmond & Danville Railroad Company, and "is, therefore, tantamount to, and operates as, an acquittal to the defendant, the Savannah & Western Railroad Company; that said finding and verdict is inconsistent with, and repugnant to, the averments of the complaint, and that, therefore, no judgment against the Richmond & Danville Railroad Company can be founded upon it." Upon the hearing of this motion the court overruled it, and the Richmond & Danville Railroad Company excepted to this ruling.

The present appeal is prosecuted by the Richmond & Danville Railroad Company, and the assignments of error cover the various rulings of the trial court to which exceptions were reserved.

JAMES WEATHERLY, for appellant.—(1.)  The motion made by the defendant for a physical examination of the plaintiff's person should have been granted.—*A. G. S. R. R. Co. v. Hill*, 90 Ala. 71; 30 Cen. Law Jour. 442; *Annonymous*, 35 Ala. 246; *Newell v. Newell*, 9 Paige Ch. 25.  (2.)  The portions of the oral charge of the court to the jury, to which exceptions were reserved, were erroneous.—*Tanner's Case*, 60 Ala. 61; *R. R. Co. v. Blanton*, 84 Ala. 157; *R. R. Co. v. Hughes*, 87 Ala. 615.  (3.)  Mere negligence in not stopping within one hundred feet of the crossing, or in not ascertaining if the way was clear, is not sufficient to authorize a recovery of punitive damages.—*R. R. Co. v. Lee*, 92 Ala. 262.  (4.)  The general affirmative charge requested by the Richmond & Danville Railroad Company should have been given, upon the theory that the two railroad companies could not be held jointly and severally liable in this suit.—*Dyer v. Hutchins*, 87 Tenn. 198; *Trowbridge v. Forepaugh*, 14 Minn. 133; *Smith v. Smith*, 19 Wis. 103.  (5.)  Charge 5 requested by the appellant should have been given.  Sec-

[Richmond & Danville R. R. Co. v. Greenwood.]

tion 1145 of the Code of 1886 does not require or exact the impossible.—*R. R. Co. v. Hughes*, 87 Ala. 615.

DICKINSON & KERR, *contra.*—(1.) The court did not err in overruling the defendant's motions for a physical examination of the plaintiff's person. Plaintiff's deposition had been taken without objection by the defendant, and the short time from the date of the motion to the time of the trial made it impracticable.— *Turnpike Co. v. Bailey*, 37 Ohio 104; *Schroeder v. R. R. Co.*, 47 Iowa 375. (2.) The court properly refused to allow each of the defendants a separate panel for a struck jury.—*R. R. Co. v. Thompson*, 77 Ala. 448. (3.) The question of punitive damages was properly submitted to the jury.—*Phil. & Reading R. R. Co. v. Derby*, 14 How. (U. S.) 468; *S. & N. R. R. Co. v. McLendon*, 63 Ala. 266; *M. & C. R. R. Co. v. Askew*, 92 Ala. 5; 7 So. Rep. 823; *M. & E. R. R. Co. v. Mallette*, 92 Ala. 209; 9 So. Rep. 363; *Bir. Un. R'wy. Co. v. Hale*, 90 Ala. 8; 8 So. Rep. 143. (4.) Charges 5, 6, 8 and 9, requested by the appellant were properly refused.—*R. R. Co. v. Jacobs*, 92 Ala. 187. (5.) Charges 5 and 11, given at the request of the Savannah & Western Railroad Company were free from error. *Smith v. Collins*, 94 Ala. 394.

McCLELLAN, J.—This is an action by Greenwood against the Richmond & Danville Railroad Company and the Savannah & Western Railroad Company, sounding in damages for personal injuries alleged to have been sustained by the plaintiff in a collision between trains of the respective railway companies at a crossing of their respective tracks. The complaint contains three counts. The first and second aver that the collision was the result of negligence and wantonness, and the third counts on simple negligence. *Each of the three counts ascribes the injury complained of to the concurring wrong of both defendants.* Thus: The first count avers that the engine and train on the Richmond & Danville road belonged to and were in charge of and being operated by servants of that company; that the engine and train on the Savannah & Western road belonged to and were in charge of, and being operated by servants of that company, and that these servants "carelessly, negligently and wantonly ran the said engines and trains so under their charge, respectively, as aforesaid, into and against each other upon or near said crossing, and plaintiff was thereby, then and there thrown down and maimed, crushed and bruised," &c., &c., &c. The

[Richmond & Danville R. R. Co. v. Greenwood.]

second count particularizes the negligence charged against the servants of the two defendants, averring it to have consisted on the part of the employees on each train, in a failure to sound the whistle and come to a full stop within one hundred feet of the track of the other road, and in their proceeding to attempt the crossing without knowing the way was clear, and then continues: "and by reason of said negligence on the part of said defendants the said engines and trains then and there collided with each other, upon or near said crossing and plaintiff was then and there thrown violently down and maimed, bruised and otherwise injured," &c. And the third count is substantially the first with the allegation of wantonness omitted: it avers that the injury complained of was caused by the negligence of the servants of both defendants.

It is to be observed that the complaint in each of its counts relies upon and seeks to recover on account of the separate and distinct wrongs of the defendants respectively : it seeks to enforce a joint liability for acts which were not joint in themselves nor bound together by the tie of a common purpose. It is a very general, if not in principle an universal, rule that this cannot be done : the wrong done must be jointly done in fact by the defendants, or if contributed to by each, a joint purpose must be imputable to them before they can be said to be joint tort feasors, and responsible jointly and severally for the resulting injury as all joint tort feasors are. It will not suffice, as a general proposition at least, that the separate wrongful acts or omissions of two persons, having no connection with each other, the motive of each being foreign to that of the other, have in their unintended coalescence and co-action produced an injury : joint and several liability cannot ordinarily be affirmed upon such a state of case. An exception to this general doctrine was virtually declared by the court of appeals of New York in the case of *Colgrove v. The New York & New Haven R. R. Co. and The New York & Harlem R. R. Co.*, 20 N. Y. 492, where it was held, Denio, J. dissenting, that a passenger injured by a collision resulting from the separate but concurrent negligence of two railroad companies, may maintain a joint action against both. This case has been followed several times in New York and by one or two cases in other States. See note to *Colgrove's Case*, 75 Am. Dec. 419. And its doctrine in a modified form is embodied in the text of the Am. & Eng. Encyc. of Law, in this language : "Tort feasors cannot be sued jointly unless the tort has been committed by their joint act, or they are jointly guilty of the

negligence or breach of duty causing the injury." Vol. 17, p. 602. The soundness of this exception to the general rule, for such it must be regarded, has been directly questioned, and is open to doubt.—*Lull v. F. & W. Imp. Co.*, 19 Wis. 100; *Trowbridge v. Forepaugh*, 14 Minn. 133; *Larkins & Moore v. Eckwurzel*, 42 Ala. 322; *Powell v. Thompson*, 80 Ala. 51. Whether sound or not, however, we need not decide in this case. The complaint here alleges a joint and several liabilty of these defendants for the result of their separate and distinct but concurring and co-acting negligence. Its sufficiency was not tested by demurrer; but both defendants pleaded the general issue, thereby admitting its adequacy as a charge of joint tort against them, confessing, in other words, that if the separate negligence and the injury charged were proved they were jointly answerable in damages; and if jointly liable upon proof against each, it follows there was also a several liability resting on that one, if only one, against which the charge was established. The court therefore properly, on this state of the pleadings, allowed the jury to acquit one defendant and bring in a verdict against the other; and hence, of course, there was no error in overruling the motion of the Richmond & Danville Company for judgment in its favor *non obstante veridicto*.

We shall not disturb the trial court's action on the motion to require the plaintiff to submit to a physical examination of his person. Under the circumstances the motion was not seasonably made; and to have granted it would probably have been to have postponed the trial when it might as well have been brought forward sufficiently early for this result to have been avoided. Moreover, it should not have been granted at all, if it would have necessitated the plaintiff's presence in Alabama and it appeared that he was not reasonably equal to the journey from his home in Texas.

There was no error in the refusal of the court to allow separate panels from which to make up the struck jury demanded.—*Montgomery & Eufaula R.R. Co. v. Thompson*, 77 Ala. 448.

In support of the trial court's action in overruling defendant's motion to exclude certain answers of plaintiff's witnesses to interrogatories propounded to them by the plaintiff, it will suffice to say that the answers were responsive to the interrogatories, and no objections to the latter were ever interposed by the defendants.—*Louisville & Nashville R. R. Co. v. Hall*, 91 Ala. 112, 119.

Moreover, none of the assignments of error addressed to

the rulings below on the admission of testimony are insisted on in argument; and we will not further discuss those rulings.

There was evidence which afforded ground for an inference of wantonness, or reckless indifference to consequences, in the conduct of the engineer in charge of the Richmond & Danville train. Without stating the testimony in full on this point, it will be sufficient to recall that of passengers on that train to the effect, or tending to show, that it's speed when approaching the crossing was from thirty to forty miles per hour, that it was not only not brought to a full stop near the crossing, as required by the statute, but that to the contrary, its speed was not at all slackened in its approach thereto ; and of the engineer and fireman on the Savannah & Western train, that the engines were in plain view of each other, when that of the latter train was about to go on the crossing, and that of the Richmond & Danville was one hundred and fifty feet away. If this testimony was true, and its truth was a question for the jury, the inference is readily, if not obviously, deducible that the Richmond & Danville engineer took the desperate chance either of passing the crossing before the immediately approaching engine on the other road reached it, or, if that engine was already there, the equally desperate chance of its being backed off before his engine reached the crossing. In either event, assuming the Richmond & Danville engineer to have been a sane man, the conclusion that he must have then had in his mind the probable consequences of his wrongful omission to make any effort to stop or to slacken the speed of his train is certain and inevitable. If the jury reached this conclusion, as upon the evidence it was open to them to do, the case involved every element of that wantonness, willfulness or reckless indifference to probable results necessary to the imposition of punitive damages. The court's charge *ex mero motu* on this part of the case, and its refusal to give charges 1 and 3 requested by the Richmond and Danville Company, were free from error.

On the other hand, there was evidence going to show that the engineer did not *know* the Savannah & Western train was upon or approaching the crossing and had not *actual knowledge* of the impending peril of a collision in time to avert it by a resort to all possible preventive effort. And the question raised by the trial court's refusal to give charges 8 and 9 requested for the Richmond & Danville Company is whether, if this evidence be true, its engineer could be guilty of wantonness, or the like. It was settled

in *Lee's Case* and again in *Webb's Case* that the knowledge of danger upon which, in connection with the absence of subsequent diligence to avoid its consequences, a charge of wantonness might be sustained, need not be that which is presently acquired through the physical senses; the party charged need not on the particular occasion see or hear, or through other sense become advised of the actual presence of every element necessary to constitute the danger that really exists. If, as was in affect declared in those cases, he knows of a crossing where people are wont to be in such numbers and with such frequency, a fact also known to him, as that to run a train along there with such great speed as not to be readily controlled and which might not admit of the escape of persons crossing the track, his conduct, he having in mind that he was approaching such a place, would authorize the imputation of wantonness, willfulness or reckless indifference to consequences, though in point of actual fact he did not in the particular instance know of the presence of persons in exposed positions.—*Ga. Pac. Rwy. Co. v. Lee*, 92 Ala. 262; *L. & N. R. R. Co. v. Webb*, 97 Ala. 308.

Tendencies of the evidence in the case at bar bring it, in our opinion, within the doctrine just stated. The engineer knew the location of the crossing; he knew that he was approaching it, for, according to all the evidence, he sounded the whistle of the locomotive with reference to it; he knew that trains on the other road were liable at any time to be on the crossing and unable to pass clear of it after the two trains were in view of each other, or might at any time be approaching the crossing without the ability to stop short of it after seeing a train rapidly approaching it on his road, and that such other trains had the same right as his to approach and be on the crossing. He was advised by the statutory rule, of which he was presently aware, of the exceeding great danger of rushing headlong onto the crossing in violation of it, and a visible sign was there to admonish him of the point beyond which in every instance it was unsafe for him to go without stopping and ascertaining the way to be clear; and he knew also of that physical conformation of the locality which obscured one road from the other and trains on them from each other, until they were so near together in approaching the crossing as that, unless the statute had been complied with, trains going even at an ordinary rate of speed would inevitably collide. The jury finding the truth of these tendencies of the evidence, and further finding, as it was open to them to do, that this engineer, with all of this

33

in his mind, hurled his train at a great speed upon the crossing, not even slackening its pace of thirty or forty miles an hour, were authorized to conclude that he had that consciousness of the perilous character of the situation and of his own conduct with reference thereto, which is an essential element of wantonness and the like, though they might also have believed that he had no *actual knowledge* of the approach of the Savannah & Western train. Charges 8 and 9 where therefore misleading, and well refused.

The plaintiff being a passenger on the colliding train of the Richmond & Danville Company, its employes, and among the rest the engineer, owed him the duty of exercising the highest degree of care, diligence and skill, in conservation of his safety, and the company was responsible in damages to him for the slightest negligence on the part of its servants resulting in injury to him.—*M. & E. Rwy. Co. v. Mallette*, 92 Ala. 209; *A. G. S. R. R. Co. v. Hill*, 93 Ala. 514. Care and diligence such as a reasonable and ordinarily prudent person would exercise is in legal contemplation reasonable and ordinary care and diligence : it is not that highest, that utmost degree of care and diligence and skill which the law exacts of the carriers of passengers. Nor is conduct actuated by good faith and an honest purpose to avoid injury to passengers the equivalent of the highest care, or even necessarily of ordinary care. It is not what a man sincerely intends doing and does with sincere purpose to a given end that determines whether in doing it he has exercised the care demanded by the situation, but the inquiry is to be resolved upon a further consideration of his acts themselves. A negligent act is none the less negligently performed because of the good faith which characterizes it. It may be that trainmen on stopping for a crossing are not required to *know* with absolute certainty in any case that the way is clear before proceeding; but, at least when the lives of passengers are at stake, they must actually make every effort, that the highest degree of care, skill and diligence requires, to be sure that the way is clear and will remain so sufficiently long for the safe passage of a bisecting road. That they may have done all *they thought* necessary for assurance will not suffice : they must have done all that the dictates of the utmost care would have suggested to be done. Charges 5 and 6 requested for the Richmond & Danville Company are faulty when brought to the touch of these considerations. They were, moreover, especially misleading in view of a tendency of the evidence to show that a train at the

"stop-post" of the Savannah & Western road could not be seen by the engineer from his position at the "stop-post" of the Richmond & Danville road. There was no error committed in refusing them.

That trainmen of one road who, have complied with the statute on approaching a crossing, have a right to assume that trainmen on the other road will also comply with it, in the absence of any indication that they can not or will not, has been expressly decided by this court in a recent case. The general charge of the court on this subject is not open to the objection presented by the exception thereto, that it ignores a duty which might have arisen upon circumstances transpiring after the train has started after complying with the statute. That matter is accommodated in the further declaration, not included in the language marked by the exception, but a part of the charge on the same point, and to be considered along with every other part, to the effect, by necessary implication, that the first train has not the right to proceed over the crossing if the circumstances indicate that the other train will not stop.—*Birmingham Mineral R. R. Co. v. Jacobs*, 92 Ala. 187.

Charge No. 11 given at the request of the Savannah & Western Company assumes that the Richmond & Danville Company was guilty of negligence, and submits to the jury the inquiry only as to whether its negligence was the proximate cause of the injury. The question of negligence *vel non* on the part of the Richmond & Danville Company was severely litigated before the jury on parol testimony. It was solely the jury's province to determine that question. The charge under consideration was invasive of the jury's exclusive prerogative to find either that that company was or was not guilty of the negligence charged. The giving of it was erroneous.—*Cary v. State*, 76 Ala. 78; *Sandlin v. Anderson, Green & Co.*, 76 Ala. 403; *Joyner v. State*, 78 Ala. 448; *Carter v. Chambers*, 79 Ala. 223; *Jones v. Field*, 83 Ala. 445.

The judgment of the City Court is reversed, and the cause will be remanded.