# Louisville & Nashville Railroad Co. v. Mosby.

*Action against a Railroad Company for Damages for Personal Injuries to Employe.*

1. *Negligence; duty of trainmen stopping at crossing.*—Trainmen after stopping for a railroad crossing, in obedience to the statute, must, before proceeding, make every effort that the highest degree of care, diligence and skill requires to be sure that the way is clear and will remain so long enough for the passage of their train over the intersecting road; and this duty is not performed by an engineer, who upon stopping at the crossing, fails to look in one of the directions of the intersectng track, and upon such engineer being injured by a collision between his engine and one that approached the crossing from the direction in which he failed to look, his failure constituted contributory negligence on his part, precluding a recovery.

2. *Same; duty of engineer when approaching railroad crossing.*—Although the engineer on an engine of a railroad having the older right of way can presume, when approaching a railroad

[Louisville & Nashville Railroad Co. v. Mosby.]

crossing, that the employes in charge of a train on the intersecting road will stop their train as required by law, it is nevertheless the duty of such engineer to stop, look and listen for approaching trains on the intersecting road; and upon his failure to look in one of the directions along the line of the intersecting road, he can not rely upon such presumption as constituting an excuse for his own dereliction and giving him a right to recover.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action brought by F. W. Mosby against the Louisville & Nashville Railroad Company to recover damages for personal injuries received in the early morning of March 7th, 1897, by a collision between an engine being operated by the L. & N. Railroad Company and an engine being operated by the Southern Railroad Company, on which latter engine plaintiff was engineer, The collision occurred at North Birmingham, where the two roads cross each other at right angles.

The complaint contained eight counts originally. The fourth and seventh counts were withdrawn. The first count alleged substantially that the two railroads crossed each other at right angles. The plaintiff was engineer in charge of the Southern engine, to which was attached a train of cars; that while he was in the act of passing over the crossing and the track of the defendant and was upon the crossing, the defendant, by its agents, violently propelled along its track a locomotive engine, to which was attached a car or cars, in such a negligent manner that the engine so being propelled by defendant with great force and violence collided with and struck the engine on which plaintiff was, whereby plaintiff was caught and pinioned and his left arm crushed, bruised and broken; his face, head and right arm were scalded, whereby he suffered great pain; his left arm was permanently injured; he was made to lose much time and to be at expense to be cured, etc. This count alleged that plaintiff's injuries were caused by the negligence of defendant, its servants and employes in the negligent and careless propelling said engine and car over and upon said crossing, while the engine upon which the plaintiff

was, was upon said crossing. The remaining counts of the complaint attributed the injury sustained by the plaintiff to the negligence of one C. M. Bryant, who was the engineer in charge of the defendant's engine, in that he failed to cause his engine to come to a full stop within 100 feet of the crossing; that he failed to give any signals or warning of the approach of his train; that he was negligent in attempting to go over said crossing without ascertaining that the way was clear, and that he was running his engine at such a negligent rate of speed that it was impossible to stop it until it had collided with the engine on which the plaintiff was.

The undisputed facts, as shown by the evidence, are that the tracks of the two roads (the L. & N. and the Southern) cross each other at right angles at the point where the collision occurred; that about 2 o'clock on the morning of the 7th of March, 1897, a collision occurred at this crossing between an engine on the Southern road, being operated by plaintiff, and one on the Louisville & Nashville road, being operated by one Bryan as engineer. That the train on the Southern was coming from Coalburg to Birmingham and consisted of an engine, tender and nine cars loaded with coal and coke. The train of the L. & N. consisted only of the engine, tender and caboose, or conductor's car. By the collision that occurred F. W. Mosby, the plaintiff, suffered the injuries complained of.

Bryan, the engineer of the L. & N., was killed. It was further shown by the undisputed evidence that at the time of the collision F. W. Mosby was using a lantern in the front of his engine instead of the regular headlight. That at Corona the plaintiff took charge of he engine. That at Coalburg, about eight miles from Birmingham, the light in the headlight gave out by reason of the failure of oil. Plaintiff endeavored to procure oil, but failed, and as a headlight placed a lantern in the place of the lamp in the headlight. That this was usual and customary under similar emergencies on well regulated railroads.

Under the opinion on the present appeal it is unneces-

sary to set out in detail the rulings upon the evidence and the charges given and refused.

The defendant requested the court to give the jury the general affirmative charge in its behalf, and separately excepted to the court's refusal to give such charge.

There were verdict and judgment for the plaintiff, assessing the damages at $5,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. and CHAS. P. JONES and ALEX C. BIRCH, for appellant.—Irrespective of errors committed by the trial court, in other matters, the defendant was clearly entitled to the affirmative charge and its refusal renders a reversal inevitable. While it is true that there is some conflict in the evidence as to what was done by the train of the L. & N. road; and to some extent, as to what was done by the train on the Southern road, of which Mosby was in charge, it is clear, however the testimony is viewed, that Mosby was guilty of negligence contributing directly to his own injuhy. The statute—Code of 1886, § 1145; Code of 1896, § 3441—made it his duty to bring his train to a full stop within one hundred feet of the crossing, and not to proceed until he *knew* his way to be clear. If we take his own evidence alone, it is clear that if he made any attempt to ascertain whether the way was clear, that attempt consisted merely in looking straight ahead of him; and while he looked to the right, he did not look to the left, nor, so far as the testimony shows, did he have the fireman look or make any examination. The words of the statute requiring an engineer *to know* that the way is clear, exact much greater diligence than Mosby exercised on the occasion of the collision.—*Birmingham Min. R .R. Co. v. Jacobs,* 101 Ala. 149; *Western Railway of Alabama v. Mutch,* 97 Ala. 194; *Birmingham Mineral Railroad Company v. Jacobs,* 92 Ala. 191 and 192.

Regardless of he positive requirement of the statute, Mosby, the plaintiff in this case, was guilty of negligence because he disregared one of the plainest precautions for his own safety.—*Ga. Pac. Ry. Co. v. Lee,* 92 Ala.

262. Mosby was approaching a place where he knew trains were likely to cross at any time, and from either direction, and giving his testimony all the weight possible, he stands in the attitude of having failed to look in one direction. It cannot be denied that a glance in that direction would have discovered the approach of the L. & N. train; and we insist that, independent of any provision of the statute, Mosby was guilty of negligence in starting his engine without looking in both directions, or causing a lookout to be made on both sides of his engine for the approach of trains. All of our authorities uniformly hold that a violation of the positive command of a statute is culpable negligence.—*Webb's Case,* 97 Ala. 308, and 90 Ala. 185; *A. G. S. R. R. Co. v. Arnold,* 84 Ala. 168; *Savannah & Western R. R. Co. v. Meadors,* 95 Ala. 127.

GEORGE A. EVANS, *contra.*—It was the duty of the engineer on the L. & N. engine, as well as of the plaintiff, upon approaching the crossing, to come to a full stop within 100 feet of the crossing and not to proceed until he knew the way was clear.—Code, 1886, § 1145. The Southern road having the older right of way, the train on that road had a right to cross first.—Code, 1886, § 1145. Where an engineer complies with the statute by coming to a full stop within 100 feet of the crossing and seeing that the way is clear, he has a right to assume that the engineer on the other road will also comply with the statute, in the absence of any indication that he cannot or will not.—*Richmond & D. R. R. v. Greenwood,* 99 Ala. 515; *Birmingham Min. R. R. v. Jacobs,* 13 So. Rep. 411; s. c. 101 Ala. 158. If the oil in the headlight became exhausted by reason of unusual delay caused by a sudden washout, it was not negligence in the plaintiff to continue the trip if the best available substitute and such as was used on well regulated railroads was used.—*A. G. S. R. R. v. Jones,* 71 Ala. 495; *Hilliker-Krebs Co. v. Birmingham Ry. & Elec. Co.,* 100 Ala. 427. It was competent to show what is done under similar circumstances on well regulated and well governed railroads.—*A. G. S. R. R. v. Arnold,* 84 Ala.

171; *G. P. R. R. v. Propst*, 83 Ala. 526; *L. & N. R. R. v. Allen*, 78 Ala. 503-4; *Holland v. T. C. & I. R. R.* 91 Ala. 451; *K. C. M. & B. R. R. v. Burton*, 97 Ala. 251; *A. G. S. R. R. v. Jones*, 71 Ala. 495-6; *L. & N. R. R. v. Hall*, 87 Ala. 722.

SHARPE, J.—So imminent is the danger from collisions at railroad crossings, that the conduct of those operating trains at such places has become the subject of statutory regulations made for the prevention of injury to persons and property. The Code of 1886, in force when the plaintiff's injury occurred, provided by § 1145 that: "When the tracks of two railroads cross each other engineers and conductors must cause the trains of which they are in charge to come to a full stop within one hundred feet of such crossing, and not to proceed until they know the way to be clear; the train on the road having the older right of way being entitled to cross first." To add stringency to these requirements, their non-observance was punishable as a crime.—Code, 1886, § 4108; present Code, § 5371. Considered with regard to civil consequences, the non-performance of these statutory duties by those upon whom they are imposed is negligence *per se*, which is not excused except by diligent effort to perform or by the existence of conditions which render their performance impracticable. *R. & D. R. Co. v. Freeman*, 97 Ala. 289.

The collision in question was with the engine on defendant's road and that on which plaintiff as engineer was in charge. It occurred at night and resulted in disaster to both engines and their engineers. As to whether defendant's train was run upon the crossing without stopping, the evidence is conflicting. Assuming that much of it amply tended to fix the charge of negligence on the defendant, which would warrant a recovery therefrom by the plaintiff in the absence of concurrent fault on his part, the plaintiff's conduct is next to be considered.

There is evidence, which, though disputed, tends to show that the plaintiff stopped his train within the required distance of the crossing. The train was running

off schedule time. Its headlight lamp was without oil and had been substituted by a lantern giving an inferior light. The plaintiff testifies that he stopped his train within 60 or 75 feet of the crossing and did not hear the L. & N. train. He says: "I only stopped a moment, just barely stopped dead still long enough to look and see if I could see anything; that was only an instant. I then started up and got 20 feet from the track when I heard the other train and it was 300 to 500 yards away, I suppose. * * * All that I had time to do was to put on the air brakes. When I stopped the pilot of my engine was just over the crossing. * * * It had come to a stop just as the other engine came against it." He further testifies that when starting to move over the crossing he looked to the right and straight ahead and saw no light from the L. & N. train. He does not testify that he looked to the left along the L. & N. road for trains that might be approaching on that road, and it was from that direction that the train with which he collided came. From the whole evidence it is plain that if he had so looked he would have been apprised of the danger of proceeding, for without conflict the evidence shows that the train on the defendant's road whether it was running or was stopped near the crossing, as is claimed by some of the witnesses, could easily have been seen. Its headlight was burning brightly and its engine was emitting sparks. It was seen by others, and the conductor of the plaintiff's train tesifies that while his train was stopping for the crossing he saw the headlight of the other approaching.

There is evidence tending to show that the place occupied by the plaintiff was on the right of the engine's boiler and that while in that position his view to the left was obstructed by machinery of his engine and the sides of the engine cap. Such obstruction, if it existed, must have increased rather than lessened the danger of the situation and cerainly did not excuse the lack of precautionary outlook which the plaintiff might have obtained by changing his position.

Independent of statute, the dictates of common prudence require that one about to cross a railroad at the

grade of its track should use his natural senses to discover the approach of trains, and especially does this apply to an attempt to cross in so cumbersome a conveyance as a railroad train. The duty created by such circumstances to stop, look and listen, which has so often been declared by this and other courts, is stated with emphasis in the recent case of *Central of Ga. R. Co. v. Foshee, ante,* p. 199.

It is contended for the plaintiff, however, that the plaintiff had the right to rely upon the presumption that the defendant's employés would themselves observe the legal requirements before crossing, and counsel cite in support of that position the cases of *R. & D. R. Co. v. Greenwood,* 99 Ala. 511, and *Birmingham Mineral R. Co. v. Jacobs,* 101 Ala. 149. The presumption referred to in those cases is but the general one that no one will violate the law. To an extent and with proper limitations, such a presumption may be relied on by one who is in the situation to indulge it, as where he is himself in the exercise of due care.—Beach on Contributory Neg., § 185. The principle is misapplied if depended upon to excuse the plaintiff's own dereliction. The reliance upon others must not be a blind one, nor is it allowed to supersede the performance of duties which rest correspondingly upon those who are about to enter upon a dangerous situation. The evidence here leads to the certain conclusion that the plaintiff failed in the duty of watchfulness, if in no other, and that his own negligence in that respect contributed proximately to his injury. For this reason the general affirmative charge requested by the defendant should have been given.

It is unnecessary to consider the assignments of error in detail. The judgment will be reversed and the cause remanded.