# Highland Avenue & Belt Railroad Co. v. Sampson.

## *Action for Damages for Injuries to Mule and Wagon.*

1. *Contributory negligence in crossing railroad track; running engine too fast.*—A person who, on approaching a railroad crossing, drives across without stopping to look and listen, is guilty of such contributory negligence as bars a recovery of damages on account of injuries sustained from a collision with an approaching engine; and the fact that the engine was running at a greater rate of speed than allowed by a municipal ordinance there in force, does not avoid or overcome the defense of contributory negligence, "if he used due diligence to prevent the collision after becoming aware of his peril, provided defendant, after plaintiff's peril was apparent, could have avoided the injury by the use of due care and vigilance."

2. *Dummy-engines on railroads.*—The court "does not commit itself to the proposition, that all the statutory provisions of the Code for the government and regulation of railroads apply alike to dummy-line railroads."

3. *Charge on part of evidence.*—When witnesses are examined on behalf of both parties, and there is a conflict on material facts, a charge which refers to the testimony of one witness only, and indicates that the jury may look to that alone, is properly refused.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Goode Sampson, against the appellant corporation, to recover damages for the loss of his mule, which was killed, and injuries to his wagon at the same time, caused by a collision with an engine and train of cars on the defendant's track, at the intersection of two streets in the city of Birmingham, on the 25th November, 1888; and was commenced on the 3d December, 1888. The record does not state that the accident occurred at night, but the evidence was conflicting as to whether or not the head-light on the engine was burning at the time; and there was conflicting evidence, also, as to the speed of the train, and as to the gait of the mule. One Grant, who was driving plaintiff's wagon, testified that the mule "was in a quick walk;" that he did not see the engine until just before it struck the mule; that he looked to the right on approaching the crossing, but not to the left, though he knew that defendant's trains came in from that direction, the view towards the left beng obstructed by a shed building. Robert Fields, an eye-witness of the accident, testified that the engine "was running very fast; that no bell was sounded, and no whistle was blown; that the defendant's trains ran fast at that point, to get up the grade; that Grant drove on the track about twenty feet in front of the moving train, and that the speed of the train was not checked before the collision." John Warner, another eye-witness, stated that the train "was going about sixteen or eighteen miles an hour; that the wagon was about thirty feet from the dummy when it undertook to cross, and that no bell was rung, or whistle blown." W. Calloway, another eye-witness, "first saw the wagon when the mule was about on the track, and when the engine was about twenty feet from it; that the train was running at the rate of about fifteen miles per hour, and that no bell was being rung, nor other signals given on the train." Carrie Sampson was on the wagon at the time of the accident, "and described it substantially as stated by said Grant." These witnesses seem to have been introduced by the plaintiff, though the fact is not stated, except as to the driver, Grant. The defendant introduced as witnesses the engineer and fireman of the train, each of whom testified, in substance, that the speed of the train was not more than seven miles per hour; that the head-light was burning, and the bell was ringing, or gong used instead of a bell; that he saw the mule as soon as it came from behind the shed, and it "was in a trot;" and that the engine was reversed, and every effort made to check the train before the collision. An ordinance of the city of Birmingham was read

36

[Highland Avenue & Belt Railroad Co. v. Sampson.]

in evidence, "which prohibited trains, running forward, from going at a greater rate of speed than eight miles per hour."

The above being "substantially all the evidence," the court gave a charge to the jury, which is set out in the opinion of this court, and to which the defendant excepted; and exceptions were also reserved to the separate refusal of nine charges in writing asked by defendant. The first and second charges are set out in the opinion, and the others were as follows: (3.) "The complaint being against the defendant as a railroad company, the measure of duty of plaintiff's driver is the same as in the case of any railroad in the streets of the city." (4.) "The right to run a steam railroad through the streets of a city, when lawfully acquired, is the right to an exclusive right to run its cars on its tracks, except at crossings, subject only to the right of the public to use the same when not in use by the railroad company." (5.) "If the jury believe that the defendant's train was not running at a greater rate of speed than eight miles per hour, and that the bell or gong was being rung at short intervals, then defendant was not guilty of negligence." (6.) "The care required of the driver was, that before attempting to cross the track he should look to see if trains were passing, or, if his view was so obstructed by buildings that he could not see the track, or an approaching train, that it was his duty to pause and listen; and if he failed to look or listen, this would be negligence on his part, which would defeat plaintiff's right to recover, if the driver, by looking or listening, could have prevented the injury." (7.) "The defendant's failure to comply with the statutes, or city ordinances, in the operation of its trains, did not excuse the driver of plaintiff's wagon from using his senses of sight and hearing before attempting to cross defendant's track; and if, by looking or listening, he could have escaped the danger, the injury is conclusive evidence of negligence, without any reference to the defendant's failure to perform its duty in regard to signals, which will defeat plaintiff's right to recover." (8.) "Plaintiff's driver having testified that he knew defendant's trains coming from Avenue E towards First Avenue ran on the track he would cross at the intersection, then it was his duty, before attempting to cross this track, to look in the direction from which such trains would come, or, if the view in that direction was obstructed, to pause and listen for trains; and if he failed to look or listen under these circumstances, this would be negligence, which would defeat a recovery, if, by looking or listening, he could have escaped the injury." (9.) "If the jury believe from the evidence that the plaintiff's driver knew that defendant's trains, coming into town, came in on the track which he would first

cross; and if they further believe that the view of the track was obstructed in the direction from which the train was coming; then it was his duty to pause and listen before attempting to cross the track, and if he failed to pause and listen, and drove on the track, this would be negligence, which would defeat a recovery, unless the defendant, after discovering the team on the track and in danger, failed to use all means in its power to prevent the injury."

The charge given, and the refusal of the several charges asked, are assigned as error.

A. T. LONDON, for appellant, cited *Telford v. Railroad Co.*, 30 N. J. Law, 195; *Railroad Co. v. Webb*, 90 Ala. 185; *Railroad Co. v. McAlpine*, 75 Ala. 118; *Railroad Co. v. Hughes*, 87 Ala. 610; 2 Wood's Railway Law, 1302; 25 Barb. 600; 40 Ill. 218.

BUSH, BROWN & WEBB, *contra*.

COLEMAN, J.—Appellee sued defendant to recover damages for killing his mule, and injuring his wagon, alleged to have been done by the wrong and negligence of the employés of defendant corporation, while operating its engine and cars over its track in the city of Birmingham.

The general principles of law to be applied to the evidence of this case, as they successively arise, are as follows: (1.) If the injury sustained by plaintiff resulted as the natural consequence of any wrong or negligence of the defendant, then plaintiff, upon such proof alone, is entitled to recover. (2.) That though defendant may have been guilty of negligence, which entitled plaintiff to recover upon this proof alone, if the evidence further showed that the plaintiff was guilty of contributory negligence, such contributory negligence would defeat plaintiff's recovery, in the absence of other testimony. (3.) That although the plaintiff may have been guilty of such contributory negligence as to defeat his recovery, the evidence stopping here, if it further appeared that defendant saw, or might have seen by the exercise of due care, plaintiff's peril in time to have avoided the injury, by due care and reasonable diligence on the part of defendant's employés, after plaintiff was in peril, and failed to exercise such care and reasonable diligence to avoid the injury; then the defendant corporation would be liable, notwithstanding plaintiff was also guilty of contributory negligence. These principles rest upon sound reasons of justice and public policy, and are sustained by previous decisions of this court.— *Gothard v. Ala. Gr. So. R. R.*

[Highland Avenue & Belt Railroad Co. v. Sampson.]

*Co.*, 67 Ala. 118; *Frazier v. S. & N. Ala. R. R. Co.*, 81 Ala. 199; *M. & E. R. R. Co. v. Stewart, ante*, p. 421.

For the safe carriage of passengers and freight, railroads are required at all times to exercise due care and diligence; but the law does not demand of them care and diligence to discover the presence of trespassers, or persons on their track, in unfrequented places. In towns and densely populated cities, the duty of vigilance and care on the part of those operating railroads in such places becomes proportionately increased and imperative. On the other hand, where it is known that trains follow or pass each other in rapid succession, the measure of duty required of persons crossing the railroad track, to avoid the increased danger of collision, is also proportionately increased. A person intending to cross a railroad upon which trains are continually being run, and who can not see up or down the track, on account of some obstruction, there being no express or implied invitation by the defendant corporation to cross, and fails, without a sufficient reason, to stop and listen, is guilty of culpable negligence *per se.—L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240, and authorities cited.

A person wishing to cross the track of a railroad at a public crossing, or any place where trains are not required to stop, and seeing a train approaching, and who for himself measures the distance and time it will take to cross, and, acting upon his own judgment, undertakes to cross, assumes the risk, and, if injured, can not hold the railroad responsible, unless his intention was apparent to the employés of defendant operating the train, and after such perilous intention and conduct became apparent, by the exercise of due care and reasonable diligence, the injury could have been avoided.

The evidence tends to show that there was a space of about twelve feet between the shed which obstructed the view, in the direction from which the dummy was approaching, and defendant's railroad track; that plaintiff's driver did not look up the track in that direction, and that he did not stop or listen, but continued to drive directly on to the railroad track. Some of the witnesses testified, that the mule was moving in a quick walk, while others testified the mule was in a trot. The evidence was also conflicting as to the signals of warning, and as to a headlight. The evidence tended to show that, when the wagon passed the shed, the dummy was from twenty to thirty feet from the crossing. The evidence conflicted as to the speed of the engine, some of the witnesses placing it as high as sixteen miles an hour, and others as low as six and a half miles per hour. The city ordinance prohibited the running of trains

at a greater rate of speed than eight miles per hour.   The engineer and brakeman testified, that they saw the wagon when it emerged from behind the shed, and immediately reversed the engine, and used all possible means to stop its further progress.

The court charged the jury, "that although plaintiff's driver failed to look or listen before driving on the track, yet, if the defendant's train was being run at a greater rate of speed than eight miles an hour, and thereby the collision was caused, which the defendant might have prevented by the use of due care in the operation of its train, and if its train had been run at a proper rate of speed; then the negligence of plaintiff's driver, in failing to look or listen, would not defeat the right to recover by the plaintiff, provided he used due diligence to prevent the collision, after becoming aware of the train's approach."   The charge, as interpreted by the court, asserts the proposition, that if defendant was guilty of the wrong of running at a more rapid rate than eight miles an hour, as regulated by the city ordinance, this would excuse the plaintiff, although he was guilty of contributory negligence in failing to stop and listen, provided he used due diligence after becoming aware of his peril.   The proposition is in conflict with the principles of law declared in this opinion, and, if allowed to prevail, would annul the principle which holds that proximate contributory negligence will prevent a recovery.   Although defendant's train may have been running at a more rapid rate of speed than eight miles an hour, and was thereby guilty of negligence or wrong, it was the duty of plaintiff to stop and listen, and, failing in this, he was guilty of proximate contributory negligence.

The true rule to be applied to the facts of the case is, that if defendant was guilty of running at a greater rate of speed than eight miles an hour (or other culpable negligence), though plaintiff was guilty of negligence in failing to stop and listen, such contributory negligence would not prevent a recovery, if he used due diligence to prevent the collision after becoming aware of his peril, provided defendant, after plaintiff's peril was apparent, by the use of due care and vigilance could have avoided the injury.   This is the proper rule in cases of contributory negligence.—Authorities *supra*.

After contributory negligence, sufficient to excuse the defendant from liability, has been proven, the burden, according to the facts of the particular case, may shift to the plaintiff, to show further negligence on the part of the defendant, which may be necessary under the foregoing rules of law to entitle plaintiff to recover.   We do not wish to be understood as hold-

ing that railroads are relieved of the burden of proof placed upon railroad companies by section 1147 of the Code, but as simply declaring that the same rules of evidence, and the shifting of the burden of proof, apply in suits against railroads, as to other parties, except when, and in cases where the legislature, acting within constitutional limitations, may have enacted otherwise; and the court does not commit itself to the further proposition, that all the statutory enactments of the Code, for the government and regulation of railroads, apply alike to dummy-line railroads, as to other railroads.

Charge No. 1, requested by defendant, "That if the jury believe the evidence of the driver, the plaintiff can not recover", was properly refused.—*Jordan v. Pickett*, 78 Ala. 332. The evidence was in conflict on many material issues, submitted to the jury, and the general charge—No. 2—was properly refused. Charges 3 and 4 were irrelevant, and abstract to any question presented in the record. Charges 5, 6, 7 and 8 would have defeated plaintiff's right to recover, although the jury may have been satisfied from the evidence that the defendant failed to use due care, after seeing plaintiff's peril, to avoid the injury.

Charge No. 9 was faulty in this. There was evidence tending to show that the engineer and brakeman saw the plaintiff's driver, as he passed the shed, and before reaching the track. Although the defendant had the right to presume that plaintiff would do his duty, and stop and listen before attempting to cross the track; yet, if plaintiff's conduct at the time was such that it was apparent he did not intend to stop, the defendant was bound to exercise such care as was reasonably practicable to prevent a collision. The charge relieves the defendant from the exercise of due care to avoid the injury from a collision, until "the defendant discovered the team *on* the track, and in danger." This duty may have arisen before the team was on the track, according to the facts of the case. There was no error in refusing any of these charges.

The only error was in the charge given.

Reversed and remanded.