# Louisville & Nashville Railroad Co. *v.* Webb.

*Action Against Railroad Company to Recover Damages for Personal Injuries.*

1. *Action to recover for personal injuries sustained at a street crossing.*— While running a train at a prohibited rate of speed without warning or signals over a public crossing may be only simple negligence, yet, if there is evidence that such train is run backward at a speed of 25 or 30 miles per hour without signal or warning over a street crossing much frequented by the public in a populous city, an ordinance of which prohibited trains from backing at a greater speed than four miles an hour, which circumstances are known to those in charge of the train, and injury results therefrom, it is properly submitted to the jury to decide whether such conduct is the equivalent of intentional wrong. (*Stone, C. J. dissenting.*).

2. *Charge giving undue prominence to a particular fact properly refused.*—Charges giving undue prominence to the facts singled out and ignoring other material facts in the case, are properly refused.

Vol. 97.

[Louisville & Nashville R. R. Co. v. Webb.]

APPEAL from Jefferson Circuit Court.

Tried before Hon. J. B. HEAD.

This action was brought by B. T. Webb to recover damages for personal injuries sustained by plaintiff by the alleged negligence of defendant at a street crossing in the city of Birmingham. The former appeal is reported in 90 Ala. 185, where the facts are fully set forth. The court refused to give thirty-six charges requested by the defendant.

HEWITT, WALKER & PORTER, for appellant. No brief came to the hands of the reporter.

J. J. BANKS, and CABANISS & WEAKLEY, for appellee, cited *R. R. v. Crawford*, 89 Ala. 240, and submitted a lengthy argument.

COLEMAN, J.—The facts of the case are substantially the same as reported in 90 Ala. 185, when the case was here on a former appeal. We will not undertake to repeat them again further than may be necessary for a proper understanding of the questions to be considered on this appeal. There are no assignments of error except those based upon the refusal of the court to instruct the jury as requested by the defendant.

Most of the charges requested and refused may be considered together, and the correctness of the ruling of the court, upon them all, we think, depends upon whether there was evidence tending to show that defendant was guilty of such reckless or wanton negligence in inflicting the injury complained of, as authorized a recovery by plaintiff, notwithstanding he was guilty of contributory negligence, and whether or not the ascertainment of the degree of negligence of which defendant was guilty, under the circumstances of this case, was properly referred to the jury; or was it the duty of the court to pronounce the conclusion of law as to the degree of negligence upon the facts, and as hypothesized in the several charges requested and refused. That the defendant was guilty of negligence, and plaintiff of contributory negligence, was determined by this court on the former appeal, and so far as these questions are involved, the facts presented in the present record are substantially the same, and fully sustain the correctness of the conclusion then declared.

The injury was inflicted in the City of Birmingham at a crossing on 24th Street—a public thoroughfare, and the evidence shows that residents of the city "went backwards

and forwards to a great extent over this crossing." By a city ordinance the speed of trains moving forward were limited to a rate of eight miles per hour, and those backing to four miles per hour, and while moving at these rates, were required to signal their approach. The proof shows that the train in question was backing, and the evidence of the different witnesses rates its speed at from eight to twenty-five or thirty miles per hour. The evidence is in conflict as to whether any danger signals of its approach were given as required by the statute or city ordinance. The evidence shows that other railroads had parallel lines to defendants and in close proximity, upon which there were cars, and which obstructed the view of persons who were beyond these parallel lines, but to one immediately near defendant's line, the approaching train could easily have been seen for some distance before it reached the crossing. The evidence tends to show that defendant's employees operating the train did not discover as a matter of fact the presence and peril of plaintiff in time to have avoided the injury by the exercise of all possible preventive effort.

We believe the controlling facts of the case are fully and fairly stated.

There was a city ordinance also which required the trains to come to a full stop before crossing 24th Street and when backing not to move forward until signaled to do so, by a watchman at such crossing.

The first question to be considered is, whether there are any facts in evidence, which show, or from which it could be legally inferred that defendant was guilty of such reckless and wanton negligence, as to authorize a recovery notwithstanding plaintiff's contributory negligence.

We have often held that if plaintiff's peril was discovered in time to avoid the injury by the exercise of due care on the part of the defendant, and the injury was the result of the failure to perform its duty in this respect that plaintiff would be entitled to recover, although he may have been guilty of culpable negligence in the first instance. *Tanner v. L. & N. R. R. Co.* 60 Ala. 641; *M. & C. R. R. Co. v. Womack,* 84 Ala. 149; *Frazer case,* 81 Ala. 185; *Railway Co. v. Lee,* 92 Ala. 262.

We have held that the mere failure to ring the bell or blow the whistle as the train approached a public crossing, constitutes simple negligence.—*Railway Co. v. Lee, supra.*

A breach of duty may amount to simple negligence or it may rise to the degree of reckless or wanton negligence according to the place and circumstances of its commission or

omission. In the case of *East Tenn., Va. & Ga. R. R. Co. v. Deaver*, 79 Ala., 221 it was held that "the rate of speed may become negligence by a co-operation of attendant circumstances, and the locality of the crossing. What would be the observance of due care and caution on approaching and passing a public crossing in the open country, would not be such when running the streets of a town or village, or in passing thoroughfares of frequent travel," and this was declared to be the rule, independent of statute.

In the case of *Memphis & Charleston R. R. Co. v. Womack*, 84 Ala. 149, the principle was distinctly recognized that it was the duty of railroad officers to keep a lookout for persons who might be upon their track in cities, towns or public crossings, and in the case of *Frazer v. S. & N. R. R. Co.* 81 Ala. 185, that the duty "was commensurate with the probable occurrence of obstruction and other dangers, and arises as to human beings when the train is approaching a public crossing, or passing through the streets of a city, town or village." The same rule is declared in *Ensley Railway Co. v. Chewning*, 93 Ala. 29.

In the case of *Ala. G. S. R. R. Co. v. Arnold*, 84 Ala. 168, the court uses this language :" "It is a rule of law, as it is a lesson of common experience, that precautionary requirements increase in the ratio that danger becomes more threatening. It is certainly true that less vigilance is demanded at a small country depot of a single road, visited but a few times in twenty-four hours, than is required in cities where many trains arrive and depart during each day and night." In the case of *Bentley v. Ga. Pac. R. R. Co.*, 86 Ala. 486, it is said that railroad "companies owe trespassers no such duty as to require a lookout for their intrusion except at public crossings and within the limits of cities, towns and villages," . . . and such trespasser can not maintain an action for an injury received while thus trespassing unless his presence on the track has been discovered or peril become apparent in time to avoid the injury, or unless such injury is caused by the wanton, reckless or intentional negligence on the part of the company or its servants." In the case of the *Highland Avenue & Belt R. R. Co. v. Sampson*, 91 Ala. 564, it is said : "In towns and densely populated cities the duty of vigilance and care on the part of those operating railroads in such places becomes proportionately increased and imperative. On the other hand when it is known that trains follow or pass each other in rapid succession the measure of duty required of persons crossing the railroad track at such places is proportionately increased."

In the case of the *Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 271, the distinction in the degree of vigilance required of those operating an engine and train over a public crossing of a considerably traveled highway and one in a populous district of a city is clearly recognized and strongly stated. After considering the question of negligence, which arises from an omission to give the signals of approach or the maintaining a high rate of speed over the former, and declaring such a breach of duty to be no more than simple negligence, it is held "that to run a train at a high rate of speed and without signals of approach at a point where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers, facts known to those in charge of the train, as that they will be held to a knowledge of the probable consequences of maintaining great speed without warnings, so as to impute to them reckless indifference in respect thereto, would render their employer liable for injuries resulting therefrom notwithstanding there was negligence on the part of those injured, and no fault on the part of the servants after seeing the danger."

In the *Savannah & Western R. R. Co. a. Meadors*, 95 Ala. 137, the rule is thus stated, "When a railroad runs its track through districts of a city, town or village, densely populated, and the demands of trade and public intercourse necessitate the frequent crossing of the track it is the duty of those operating an engine over the track in such places to keep a lookout. This duty is not specially imposed by statute, but arises from the likelihood that in such places there are persons on the track, and the bounden duty to guard against inflicting death or injury in places and under circumstances where and when it is likely to result unless due care be observed. The duty arises when the circumstances exist which call for its exercise."

In the case of *Nave v. Ala. G. S. R. R. Co.*, 11 So. Rep. 391, the case of *Glass v. M. & C. R. R. Co.*, 94 Ala. 581; 10 So. Rep. 217, was explained and the rule declared in *R. R. Co. v. Lee*, 92 Ala. 271, re-affirmed. See also *Ala. Gr. So. R. R. v. Hill*, 93 Ala. 525–6.

The practice which prevails in this State authorizes the introduction of evidence of reckless, wanton or willful negligence on the part of the defendant under a complaint which avers only simple negligence, and a recovery may be had upon such proof, although the evidence may sustain a plea

[Louisville & Nashville R. R. Co. v. Webb.]

of simple contributory negligence.——*Chewning's case.* 93 Ala. 30, *supra; Meadors' case,* 95 Ala. 137, *supra; Arnold's case,* 84 Ala. *supra; Wilkerson v. Searcy,* 76 Ala. 181; *Tanner's case,* 60 Ala. 641, *supra; Womack's case,* 84 Ala. 149, *supra; Frazer case,* 81 Ala. 185, *supra; Lee's case,* 92 Ala. 262, *supra; Sampson case,* 91 Ala. 564, *supra; E. T. V. & G. R. R. Co. v. Kornegay,* 92 Ala. 230; *L. & N. R. R. v. Webb,* 90 Ala. *supra.*

In the case of the *L. & N. R. R. Co. v. Watson,* 90 Ala. 69, the court uses this language: "But contributory negligence is not a defense, when the defendant's servants knew of the plaintiff's peril, and could have avoided the injury, notwithstanding the negligence of the plaintiff, by the use of ordinary care, or where the injury is inflicted with such gross negligence on the part of the defendant's employees as to be the legal equivalent of recklessness, wantonness or intentional wrong." And in the case of *Tanner v. L. & N. R. R. Co.,* 60 Ala. *supra,* it was held that "either wantonness or intention on the part of the defendant will overcome the defense of contributory negligence."

In the case of *Ga. Pac. R. R. Co. v. O'Shields,* 90 Ala. 29, it was held that plaintiff was entitled to recover notwithstanding he was guilty of contributory negligence in that he was upon defendant's track as a trespasser, and neither listened nor looked for approaching trains. The facts showed that the collision occurred within the city limits of Anniston, where it was the duty of defendant to keep a lookout, even for trespassers, that by city ordinance, trains were prohibited from running at a greater speed than six miles per hour, and that plaintiff was in plain view of defendant's operatives when five or six cars were detached from the engine and allowed to run down grade towards plaintiff. Only one brakeman was left on the detached cars to regulate the speed and the cars were without appliances to give warning of their approach. At the time of the collision the cars had attained a speed greater than that permitted by the ordinance, in spite of the exertions of the brakeman. It was held, "that there was such gross negligence on the part of the defendant's employees, as amounted to that reckless disregard of the safety of plaintiff and his property, which is the legal equivalent of intentional wrong, against which the contributory negligence of the plaintiff furnished no defense." We think the doctrine of what constituted "intentional wrong" extended too far in the *O'Shield's case* from which we have quoted, and that the proper rule is that declared in the *Lee case, supra,* and in this opiniin. The writer of the opinion in the *O'Shield's case* concurs in this conclusion.

It is clearly settled that the running of an engine and cars, over a public crossing, or within the limits of a city, in violation of the provisions of the statute of the State or city ordinance regulating their speed, and requiring signal warnings to be given at such times and places of itself amounts to simple negligence, and having regard to the principles declared in the cases cited by us, and the public safety, can it be said as a conclusion of law, that the rushing of a locomotive and train of cars, an instrument so powerful for the destruction of life and property, through populous districts of cities and towns and over public crossings on crowded thoroughfares, places where in all likelihood persons may be crossing, at the rate of twenty-five or thirty miles an hour, or about thirty feet per second, without giving any signal of warning, of its approach and in violation of the statute of the State and the city ordinances, is no more, under all circumstances, than simple negligence? There was evidence which, if believed by the jury, authorizes them to find the facts as here hypothesized.

As we have said in *Arnold's case, supra,* "precautionary requirements increase in the ratio that danger becomes more threatening," and in *Sampson's case and Meador's case, supra,* "the duty of care and vigilance becomes proportionately increased according to the less or greater likelihood that there are persons on the track at the time and place," and in *Lee's case, supra,* "reckless indifference will be imputed to those who run a train at a high rate of speed without signals of approach when trainmen have reason to believe there are persons in exposed positions as over unguarded crossings in a populous district of a city, or where the public are wont to pass with such frequency and in such numbers, facts known to those in charge of the train," &c.

The public is entitled to the right of way over public crossings, as much so, as the railroad itself. Persons in the proper exercise of this right are in no sense trespassers, and while it is incumbent on them to exercise due care, by looking and listening for approaching trains, it is equally the duty of those operating trains over such places to exercise due care to prevent injury. If in utter disregard of this duty, and of the many restrictions imposed by the statute and city ordinances enacted to protect life and property at such places, those in charge should rush an engine voluntarily and unnecessarily over a public crossing, when it is likely, at the time persons are exercising their right to cross the track as a public highway, a condition or fact, on account of its location in a populous city, and the extent of its use

as such, would authorize a jury to infer was known to defendant, with such reckless speed that due care in keeping a proper lookout for persons who might be upon the track could not be had by those operating the train, or if such persons should be discovered upon the track, could not possibly stop or slacken its speed in time to avoid inflicting injury, and injury did result from such negligence, can it be said as a conclusion of law, upon any safe rule, that such reckless conduct and disregard of consequence, is not the equivalent of willfulness or wantonness?—*Shoemaker v. St. L. & S. F. R. Co.*, (Ark.) 39 Fed. Rep. 174.

We are of opinion that a train may be run under some circumstances over a public crossing in a populous city at such speed as to amount to that recklessness which is the equivalent of wantonness and willfulness.

The court can not as a matter of law, from the very character of the question, pronounce precisely and infallibly the precise rate of speed at which a train may be run over such a crossing under the circumstances here testified to without being guilty of culpable negligence. When therefore, it is shown that the train was run at a greater rate of speed over a public crossing used, to the extent the evidence shows the present was used, in a populous city, than is permitted by the city ordinance, and without regard to the regulation adopted by the city, for the protection of persons using the crossing as a public thoroughfare, and in violation of the statutes of the State regulating the speed and signals to be given at such places, and there is evidence tending to show that the injury resulted therefrom, it is proper and necessary to submit the fact of the degree of negligence to the determination of the jury. The ruling of the court was in accord with the law as we have declared it. Charge No. 34 and others which assert a contrary rule were properly refused.

The charges which singled out one question of disputed fact and based a conclusion of law upon the finding of the jury as to the particular fact were properly refused. Many of the charges are of this character. Such charges give undue prominence to the fact singled out and ignore other material facts in the case. The jury might have found the particular facts in favor of the defendant and yet have been satisfied under the instruction of the court that plaintiff was entitled to recover. The court instructed the jury unless the defendant was guilty of reckless or wanton, or willful negligence, the plaintiff could not recover, and in coming to a conclusion, it was the duty of the jury to consider all the

evidence of the case.   There was no exception to the charge given by the court *ex mero motu*, and we need not further consider it.

It can not be said as a conclusion of law, upon the facts of the case, that the complainant was guilty of wanton or reckless negligence.

We find no error in the record.

.Affirmed.

STONE, C. J., dissenting.