# Alabama Great Southern Railroad Co. v. Anderson.

*Action to Recover Damages For Personal Injuries.*

1. *Negligence of railroad company; making "kicking" or flying" switch in violation of municipal ordinance.*—A railroad company is chargeable with negligence, where its servants, in violation of a municipal ordinance prohibiting the making of flying or running switches on or across any street, make a "kicking" or "flying" switch in the night time over one of the most frequented streets of the city.

2. *Same; negligence of flagman at crossing; contributory negligence.*—Where the flagman, at a railroad crossing in a city, displayed a signal which, under a municipal ordinance, was an assurance that the way was clear, the driver of a vehicle is not chargeable with contributory negligence in going upon the track without stopping his team in order to look and listen.

3. *Same; negligence of flagman at crossing.*—Where a railroad company's flagman at a street crossing discovered that his signal to the driver of an approaching vehicle was unobserved or unheeded, it was his duty to flag an approaching train, when this could have been done before the danger became imminent.

APPEAL from the City Court at Birmingham.
Tried before the Hon. H. A. SHARPE.

This was an action by Frank Anderson against the

Alabama Great Southern Railroad Company, to recover damages for personal injuries, and for the destruction of his carriage, and injuries to his horses, resulting from the alleged negligence of the defendant. The defendant pleaded the general issue, and contributory negligence on the part of the plaintiff. The case was tried on issue joined on these pleas. The facts developed on the trial were, in substance, as follows: On the 15th day of July, 1893, the plaintiff, with a driver, was in a carriage belonging to the plaintiff, and was attempting to cross the railroad track on Twentieth street in Birmingham, Ala., coming from the south side, and going towards the north side, of the city. It was at night, but several electric lights were burning at the crossing. Twentieth street, at this place, is crosssd by a good many railroad tracks, and is a principal crossing in the city, and the railroads use the same, constantly crossing the street, day and night, in carrying on their business. The testimony showed that the persons in the carriage were thoroughly familiar with this crossing, and knew that it was constantly used by the railroads, as well as by pedestrians and those crossing in vehicles from one side of the street to the other. The testimony further showed, on the part of the plaintiff, that he did not stop before he started across this railroad crossing, but that he did look up and down the railroad tracks to see if any train was coming, and did not see any. His testimony further showed that a flagman, who was on the track, waved a white light, as a signal for him to cross, and that he started across, but, before he had gotten across, his carriage was struck by two cars which he said had been cut loose from the engine; and he himself was hurt, and his carriage crushed to pieces, and his harness and his horses damaged. His testimony showed, also, that, as he was coming along in his carriage, he and his driver, George Elliott, were engaged in conversation, and that they were crossing the railroad tracks at a trot. The evidence for the plaintiff showed further that his injuries were painful, and that he was in bed for some little time, and unable to work for nine weeks, and that his services were worth about a dollar and a half a day during the time he was unable to work. His evidence also showed that his carriage was worth from $350 to $400. He further proved that the cars, at the time they hit his

carriage, were running at the rate of seven or eight miles
an hour; that the cars were crossing the street from the
west to the east side, and that he was crossing the street
on the east side; and that his carriage was struck over
on the east side of the crossing. His evidence further
showed that he was not under the influence of liquor.
The plaintiff also introduced in evidence five sections of
the City Code of Birmingham, all of which have refer-
ence to the duties of the railroad companies and to the
duties of the citizens of the city in crossing Twentieth
street crossing. The defendant's evidence showed that
the plaintiff was driving his carriage at the rate of about
10 miles an hour, in a trot, and that he did not stop be-
fore he started across the railroad tracks. The defend-
ant's evidence further showed that the servants of the
defendant had moved the train down from the east to the
west side of the crossing in order that all persons who
desired to cross might cross over the crossing; that, af-
ter the parties had all crossed, they started to move the
train back across Twentieth street to the east side; that
before the train got on Twentieth street, as the cars
were approaching, the flagman was about 15 or 20 feet
in front of the cars, walking along the track, waiving
his red light as a signal of danger, for the people not to
attempt to cross; that, when the car furthest from the
engine (the train was backing) was about two-thirds of
the way across Twentieth street, the foreman of the train
stepped in between the cars to cut off the two cars which
the evidence showed had been cut loose from the engine,
leaving the seven cars still attached to the engine; that
the foreman did not see the plaintiff approaching when
he went in between the cars to cut them off; that he
heard somebody driving at a rapid rate, but, his back
being in that direction, he saw no one coming; that, as
the foreman stepped out from between the cars which he
had cut loose, he saw the plaintiff attempting to cross
the track on the east side of Twentieth street, just in
front of the moving cars; and that he gave a signal to
the engineer to stop the train, and it was stopped as soon
as possible. The testimony of the defendant further
showed that the carriage was driven in between the flag-
man, who had the red lantern, and the car that struck
the carriage. The evidence of the defendant further
showed that the speed of the car was from two to four

miles an hour, excepting one witness for the defendant, who testified that it was moving six or seven miles an hour. There was evidence for the defendant tending to show that the plaintiff was driving recklessly; that the flagman hallooed to the plaintiff, besides waving his red light, but that the plaintiff paid no attention to the warning. There was also testimony for the defendant showing that, at the time of the accident, and while the train was crossing the street, the bell of the engine was ringing, and that the headlight on the engine was burning; that the engineer received the signal from the foreman to stop, and that as soon as the signal was given he reversed the engine, and sanded the track, and that the train was stopped as soon as it could have been after he received the signal. On the hearing of all the evidence, the court, trying the case without a jury, rendered judgment for the plaintiff, assessing his damages at $700. The defendant appeals from this judgment, and assigns the rendition thereof as error.

A. G. SMITH, for appellant. 1. Under the evidence, the defendant was not guilty of wanton negligence or willful injury.—*Railroad Co. v. Lee*, 92 Ala. 262; *Railroad Co. v. Vaughn*, 93 Ala. 209; *Railroad Co. v. Glass*, 94 Ala. 581; *Vance v. Richmond & Danville R. Co.*, 93 Ala. 144; *Louisville & Nashville R. Co. v. Trammell*, 93 Ala. 350; *Railroad Co. v. Ross*, 14 So. Rep. 282; *Ala. Great Southern R. Co. v. Linn*, Mss. 2. If the employés of the railroad company were guilty of any negligence, it was simple negligence, and the plaintiff was guilty of such proximate contributory negligence as would defeat his recovery in this case, as he did not stop, and look and listen, before he started across the railroad tracks.— *Railroad Co. v. Sampson*, 91 Ala. 560; *Railroad Co. v. Lee*, 92 Ala. 262; *Railroad Co. v. Kornegay*, 92 Ala. 228; *Railroad Co. v Crawford*, 89 Ala. 240; *Leak v. Railroad Co.*, 90 Ala. 161; *Railroad Co. v. Maddox*, 13 So. Rep. 615; *Railroad Co. v. Webb*, 90 Ala. 185; *Gothard v. Ala. Great Southern R. Co.*, 67 Ala. 114. 3. If the court should hold that the employés of the railroad company were guilty of wanton negligence or willful injury, the plaintiff himself was guilty of equal negligence, and is not entitled to recover.—*Georgia Pacific R. Co. v. Lee*, 92 Ala. 262.

[Alabama Great Southern Railroad Co. v. Anderson.]

BOWMAN & HARSH, *contra.*—1.  The defendant was guilty of negligence.—*a.  Frick v. St. Louis, K. C. & N. Ry. Co.,* 75 Mo. 609 ; 4 Am. & Eng. Ency. of Law, 910 ; *b.*  Violation of municipal ordinance is negligence *per se.* —*Karle v. Kansas City, M. & B. R. Co.,* 55 Mo. 476 ; *Driscoll v. Market St. Cable Co.,* 38 Am. St. Rep. 203 ; *Railway Co. v. Wilson,* 25 Am. Rep. 693; *Katzenberger v. Laws,* 25 Am. St. Rep. 681.  2.  Plaintiff was not guilty of contributory negligence.—*Hayes v. Gainesville, etc. Ry. Co.,* 8 Am. St. Rep. 624 ; *Valin v. Milwaukee, &c., R. Co,* 33 Am. St. Rep. 17.  3.  Defendant was guilty of reckless and wanton or intentional negligence, which overcomes contributory negligence.—*Louisville & Nashville R. Co. v. Webb,* 12 So. Rep. 374 ; *Georgia Pacific Ry. Co. v. O'Shields,* 90 Ala. 29 ; Note to 33 Am. St. Rep. 29 ; *Virginia Midland Railway Co. v. White,* 10 Am. St. Rep. 874; *Deans v. Railroad Co.* 22 Am. St. Rep. 902.

BRICKELL, C. J.—We have several times had occasion to consider the relative duties of railway companies and travellers at public crossings.  Our former decisions on the subject will be found collated in *Louisville & Nashville R. Co. v. Webb,* 97 Ala. 308.    In that case, as here, the injury occurred where a thoroughfare in the city of Birmingham crossed the tracks of several railroads ; and we attempted to differentiate cases of this character— crossings in populous cities—from less frequented crossings in the country.  This case differs from that, in the fact that the person there injured was a pedestrian, while here he was driving a vehicle ; but this fact in no wise affects the principles there announced.  The duty to increase the degree of care in proportion to the danger to be apprehended, at such places, pertains alike to both cases.

A number of sections of the City Code of Birmingham, relating to the movement and speed of trains, the duties of flagmen, &c., were put in evidence.  By section 465, it is provided :  "It shall be the duty of such flagmen to remain at all times in full view of persons approaching such crossings, either on foot or in vehicles, and to signal them to pass over, if they can safely do so, or to stop, if a train is approaching too near to admit of a safe passage."  Section 466 prohibits the moving of trains at a greater rate of speed than 8 miles an hour, when run-

ning forward, or four miles an hour when moving backward, and requires a headlight on the engine or train at night, and the giving of signals by whistle or bell, at all times. By section 467, the making of flying or running switches on or across any street is prohibited, and made punishable by fine. We have held in many cases that a violation of ordinances of this character is culpable negligence. *Louisville & Nashville R. Co. v. Webb, supra,* and cases there cited. Whether, notwithstanding such violation, the plaintiff may be barred by contributory negligence, depends upon the attendant facts. In the *Webb* case, *supra,* we held that running a train at a high rate of speed over a crossing such as this might "amount to that recklessness which is the equivalent of wantonness and willfulness;" but that the question was one for the jury. This is a stronger case, taking it in its most favorable aspect for the appellant. A "kicking" or "flying" switch was being made *in the night time,* over one of the most frequented streets of the city. But whether, on the facts alone, the servants of the company were not guilty of such recklessness as would be the equivalent, *as matter of law,* of wantonness or willfulness, the necessities of this case do not require us to decide. That they were guilty of simple negligence cannot be denied.

Was there contributory negligence on the part of the plaintiff? We have frequently emphasized the duty to stop, look, and listen on approaching a public crossing.— *Louisville & Nashville R. Co. v. Webb,* 90 Ala. 185. In *Georgia Pacific Ry. Co v. Lee,* 92 Ala. 262, the necessity of "looking" was qualified, in cases where, the view being obstructed, the driver, in performing the duty, would be compelled to leave his team unattended. Here, as there, the view was obstructed by a standing train. It is unnecessary, however, to discuss this aspect of the case, for it is affirmatively shown that the plaintiff went upon the crossing without stopping. This, if inexcusable, would, of itself, constitute contributory negligence; and if excusable would also dispense with the other duty. In *Webb's* case, 90 Ala. 185, 197, we left it an open question whether the fact that the gate to a crossing was left open (it being the duty of the servant to close it on the approach of a train) was not an implied invitation to cross. Treating that question as still open, the evi-

dence of the plaintiff and the person who was with him, if believed, here disclose an *express* invitation. Both testify that the flagman displayed a white light, which, under the section we have quoted, was an assurance that the way was clear. There is other evidence, it is true, in conflict with this; but, on the whole evidence, aided by the presumption that the plaintiff, if warned in time, would not have placed himself in a position of such imminent peril to his life and limb, we will not disturb the finding. Besides, it is shown by the evidence that the servants of the company, before the danger became imminent, were aware of the approach of the vehicle. If, as the flagman testifies, the plaintiff was distant 150 feet when he was warned, it was his duty to have flagged the approaching train, upon discovering that his warning was unobserved or unheeded. It is also shown that the brakeman was aware of the approach of the vehicle, when preparing to uncouple the moving cars. A signal at this juncture, to the engineer, would, under the evidence, have averted the injury.

On the whole evidence, we concur in the judgment of the court below.

Affirmed.