# Birmingham Southern Railroad Co. v. Powell.

## Action for Negligence.

1. *Assumption of risk; no defense to wanton or intentional injury.*
   In an action to recover damages for personal injuries, where
   the complaint contains a count which charges that the in-
   juries were caused by the wantonness of intentional wrong
   of the defendant, a plea setting up an assumption of risk on
   the part of the plaintiff constitutes no defense to such a
   count and is demurrable.

2. *Railroads; statute prescribing duty as to railroad tracks applicable
   to street railroads operated by electricity.*—The provision
   of the statute prescribing the duty of railroads whose tracks
   cross each other as to such crossing (Code, § 3441), is ap-
   plicable to street railways operated by electricity.

3. *Statutory provision as to railroad crossing; what required of
   employees.*—Under the statute imposing the duty upon en-
   gineers and conductors running trains upon tracks of two
   railroads which cross each other (Code, § 3441), it is neces-
   sary not only that they should require the trains con-
   trolled by them, to come to a full stop within one
   hundred feet of the crossing before attempting to cross, but
   that they must not cross until, by the exercise of the highest
   degree of diligence, they have ascertained that the way is
   clear; and if the conductor or engineer of a train or the con-
   ductor or motorman of an electric street car on one of two
   intersecting roads proceeds across the intersecting track
   without knowing, after the exercise of the highest degree of
   diligence, that the way is clear, he is guilty of negligence.

4. *Same; right of persons in control of car to presume compliance
   with statute.*—Although an engineer or conductor on the
   train of a railroad company, or the motorman or conductor
   of an electric street railway car, when approaching a cross-
   ing where there is an intersection of another railroad, has
   the right to presume that the employes of the train upon the
   intersecting road will stop their train as required by law, it
   is, nevertheless, his duty, after having complied with the

[Birmingham Southern Railroad Co. v. Powell.]

statute himself, to keep a lookout for approaching trains; and if, in the face of acts reasonably indicating that the train approaching on the intersecting road is not going to stop at said crossing, he attempts to cross, he thereby becomes chargeable with negligence.

5. *Negligence; when question of wantonness or intentional injury should be submitted to jury.*—In an action to recover damages for personal injuries, it was shown that the plaintiff was a conductor on a car operated by an electric street railway company, and that the injury was received by the plaintiff by reason of a collision between the car on which he was conductor and a train of cars operated on defendant's track, which collision occurred at a crossing of the tracks of the two companies in a public street in the city of Birmingham; that the defendant's employees in charge of its train were, at the time, making what is called a "drop switch," the said train being composed of several loaded cars, and that nine of the cars were cut loose from the engine and permitted to roll by their own momentum down an incline to said crossing; that the car on which the plaintiff was conductor, and which was run into by the defendant's train of cars, stopped within about 15 feet of the crossing, and after having so stopped proceeded to cross, and when on said crossing and in front of the approaching cars on the intersecting road, said electric car stopped by reason of the failure of the electric current; that the motorman of the electric car abandoned his post and the plaintiff went to it and attempted to work the controller with the intent of backing the car off the crossing, and while so engaged the collision occurred, producing the injury. The evidence for the plaintiff tended to show that there was no brakeman or other person on the loaded cars when they were cut loose from the engine; and without any one to manage or control them, said cars were allowed to run down grade at a speed of 15 miles an hour across the track of the electric car line, in a public street of a city; that the conductor of the defendant's train, who cut the cars loose, was familiar with the crossing, and he and the employees knew that the electric cars were running on said electric road and over the crossing every few minutes in the day. *Held*: That under such evidence it was proper to submit the question of wantonness or willful or intentional wrong to the jury.

[Birmingham Southern Railroad Co. v. Powell.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHARLES A. SENN.

This action was brought by the appellee, Thomas E. Powell, against the Birmingham Southern Railway Co., and sought to recover $15,000 damages for personal injuries alleged to have been sustained by the plaintiff, by reason of the negligence of the defendant or its employes.

The pleadings in the case and the facts necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

The defendant separately excepted to the following portions of the court's oral charge to the jury: (1.) "The duty of the conductor and motorman on approaching the crossing, first, is the duty to stop. The duty is on both, because the conductor is in charge of the motorman, and they must stop within the 100 feet. Then they must see and know the way is clear. If in the exercise of a high degree of care it appears to a reasonably prudent man any train in motion beyond the 100 feet will stop, he has a right to indulge in the presumption of the law that a man will do his duty, will stop at 100 feet, then the way is clear, but he must exercise his sight, see the way is clear; this must be done under a very high degree of care, and he must take into account all the circumstances. He has no right to rely that in any event the car will stop, but if under all the circumstances, the car being beyond the 100 feet and in motion, if it appears to a reasonably prudent man, in the exercise of that high degree of care given you, the presumption the law allows the man to indulge is that every man will do his duty, I say under those circumstances he has a right to presume the car will stop within 100 feet. But if the speed of the train is such, or the circumstances in any event are such an ordinary prudent man would think they would not, could not, or did not intend to stop, then it would be negligence for him to cross." (2.) "If you believe plaintiff is entitled to recover under the second count, that is that it was wantonly done, then you might allow what is called punitive damages, damages not given by way of compensation, but given by way of punishment in addition to compensatory damages. They are

[Birmingham Southern Railroad Co. v. Powell.]

what the books term smart money, to punish the guilty, and not so much to reward the man for his injuries." (3.) "After you have examined the complaint, the first, third, fourth and fifth counts, if you come to the conclusion plaintiff is not entitled to recover by reason of the pleas of contributory negligence, it will be your duty to investigate the second count of the complaint, and if you are reasonably satisfied from all the evidence, that this injury was wantonly or intentionally done, find as I have just defined it, why then he would be entitled to recover, regardless of the pleas of contributory negligence."

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe all the evidence in this case, they must find a verdict for the defendant." (7.) "If the jury believe from the evidence that the plaintiff was a conductor of the electric car which collided with the car on the railroad track, and that he allowed said electric car to go on the railroad crossing without knowing that the way was clear, and that this contributed proximately to his own injury, then they must find a verdict for the defendant." (8.) "The court charges the jury that in this case there is no question of wanton negligence or willful injury." (9.) "If the jury believe from the evidence that the defendant's flagman was at or near the crossing just before the collision, and that such flagman flagged the electric car, or signalled it not to go on the crossing, and that plaintiff notwithstanding that allowed the electric car to go on the crossing, and that this contributed proximately to his own injury, then they must find a verdict for the defendant." (10.) "The court charges the jury that the plaintiff was in charge of the electric car, as conductor, and that it was the duty of plaintiff not to attempt to go over the crossing until he actually knew that the way was clear, and if they believe from the evidence that plaintiff ordered or signalled the car forward, without first observing to see that the way was clear and that there was no danger, and that his failure in this respect contributed proximately to his own injury, then they must find for

defendant." (11.) "The court charges the jury that the plaintiff was in charge of the electric car, as conductor, and that it was the duty of plaintiff not to allow the car to go on or over the crossing until he knew that the way was clear, and if they believe from the evidence that plaintiff permitted the car to go on the crossing without first observing to see that the way was clear and that there was no danger, and that his failure in this respect contributed proximately to his own injury, then they must find for the defendant." (12.) "The court charges the jury that it was the duty of plaintiff to exercise the highest degree of diligence to ascertain whether or not it would be safe for his electric car to go on the track of the defendant at the crossing, and if they believe from the evidence that he failed to exercise that highest degree of diligence to ascertain that fact and that this contributed proximately to his own injury, they they must find a verdict for defendant." (13.) "If the jury believe from the evidence that plaintiff, by the exercise of proper diligence, or by looking out, could have seen the cars of defendant approaching the crossing, and that he failed to look out, and failed to see the approaching cars, but started, or allowed the electric car to go on the crossing, and that the collision occurred in consequence thereof, then they must find a verdict for the defendant." (15.) "The court charges the jury that the plaintiff was guilty of negligence which contributed proximately to his own injury, and that they should find a verdict for defendant." (16.) "If the jury believe from the evidence that the servants of the defendant before cutting the cars loose sent a flagman or watchman ahead of the cars to see that the crossing was clear, and that the flagman or watchman so sent ahead did ascertain that the crossing was clear and then signalled the cars on defendant's road over the crossing, and that in obedience to the signal the cars were cut loose and started over the crossing, and that the flagman then signalled the electric car to stop, and not attempt to make the crossing, and that plaintiff gave the motorman the signal to go ahead over the

crossing with the electric car, and that in obedience to such order the motorman started over the crossing, and the collision resulted and the plaintiff was injured in consequence thereof, then they must find a verdict for the defendant." (17.) "If the jury believe from the evidence that the servants of defendant cut the cars loose to go over the crossing after the flagman or watchman had given the signal that the crossing was clear, and that after the cars started, the electric car came up to the crossing and stopped, and was warned by the flagman or watchman not to attempt to cross, and that notwithstanding such warning, the plaintiff gave signal to motorman to go over the crossing, and the electric car was in obedience to such signal, moved on the crossing, and the collision occurred, I charge you that the original negligence of defendant was not the proximate cause of the injury to plaintiff, but the proximate cause of the accident was the act of the plaintiff, and the motorman in moving the car on the crossing after such warning." (18.) "If the jury believe from the evidence, that when the electric car stopped at the crossing, that at that time the cut off cars on the Birmingham Southern had been cut loose from the engine and were on their way to the crossing, in full view of the conductor, had he looked, it makes no difference, so far as this case is concerned, whether there was a flagman at the crossing or not, or whether there was a brakeman on top of the cut off cars or not, your verdict would have to be for the defendant." (20.) "The court charges the jury that, in this case, they can not consider the fact, if it be a fact, that plaintiff or the motorman, either or both, would be deterred from attempting to make the crossing on account of the danger to them in making the crossing, at the time and place where the attempt was in fact made." (22.) "The court charges the jury that in this case there is no question of punitive damages, but if they should find a verdict for the plaintiff they can only give him damages to compensate him for the injuries he has received and can not give any damages to punish the defendant."

There were verdict and judgment for the plaintiff,

[Birmingham Southern Railroad Co. v. Powell.]

assessing his damages at $15,000. The defendant appeals, and assigns as error the rulings of the court in sustaining the demurrer to the sixth plea of the defendant, and the giving of the portion of the court's oral charge to which the defendant excepted, and the refusal of the court to give the several charges requested by the defendant.

SMITH & WEATHERLY and E. D. SMITH, for appellant.—The court should not have sustained the demurrer to special plea No. 6 to the second count of the complaint.—*Highland Ave. & Belt R. R. Co. v. Sampson*, 91 Ala. 564; *M. & C. R. R. Co. v. Martin, Adm*., 117 Ala. 367.

The court should have given the general affirmative charge for the defendant.—Code, § 3441; *Southern Ry. Co. v. Bryan*, 28 So. Rep. 445; *L. & N. R. R. Co. v. Anchors*, 114 Ala. 492.

There is no element of wanton negligence or intentional injury in the evidence in this case, and the court should not have left the question of wanton negligence or intentional injury to the jury.—*A. G. S. R. R. Co. v. Moorer*, 116 Ala. 642; *M. & C. R. R. Co. v. Martin*, 117 Ala. 367; *A. G. S. R. R. Co. v. Burgess*, 114 Ala. 587; *L. & N. R. R. Co. v. Anchors*, 114 Ala. 492; *Burson v. L. & N. R. R. Co.*, 116 Ala. 198; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599; *Glass v. M. & C. R. R. Co.*, 94 Ala. 581.

BOWMAN & HARSH, *contra*.—The plaintiff's demurrer to the sixth plea of the defendant was properly sustained. It complains of the sustaining of appellee's demurrer to the sixth plea of appellant, it being a plea to the second or wanton count. The plea sets up facts which would, at best, constitute negligence or possibly wantonness on the part of plaintiff, (though we do not think wantonness), and avers that plaintiff assumed the risk of defendant's wanton misconduct. This court has said, that even if one desired to commit suicide and in carrying out his desire, should place himself upon a railroad track, this would not excuse the defendant

wantonly doing the killing.—*L. & N. R. R. Co. v. Orr, Admr.,* 121 Ala. 490; *L. & N. R. R. Co. v. Markee, Admr.,* 103 Ala. 160.

It can not be stated as a matter of law that the plaintiff under the facts of this case was guilty of contributory negligence.—*R. R. Co. v. Greenwood,* 99 Ala. 515; *Bir. Min. R. R. Co. v. Jacobs,* 101 Ala. 149.

The question of wantonness or intentional injury was properly submitted to the jury.—*Martin v. R. R. Co.,* 117 Ala. 385; *A. G. S. R. R. Co. v. Anderson,* 109 Ala. 299; *L. & N. R. R. Co. v. Webb,* 97 Ala. 308.

DOWDELL, J.—This is an action brought by the plaintiff to recover damages for personal injuries received in a collision between the cars of the defendant company and a car of the Birmingham Railway & Electric Company, at an intersection or crossing of the tracks of the two companies in one of the public streets of the city of Birmingham. The complaint contained five counts, all of which, except the second, charged simple negligence. The second count, as amended after demurrer sustained to it, charged wanton or intentional injury. Six pleas were filed by the defendant, the first plea being the general issue to all the counts; the second, third, fourth, and fifth pleas being pleas of contributory negligence, and were pleaded to each of the counts, except the second count. The sixth plea was a special plea to the second, setting up an assumption of risk on the part of the plaintiff. To this plea a demurrer was interposed by the plaintiff, and was sustained by the court, and this action of the court constitutes the first assignment of error.

The assumption of risk by one, no more than contributory negligence, can be set up as a defense to a count charging intentional injury and wrong. This doctrine was plainly laid down by this court in the case of *L. & N. R. Co. v. Orr, Admr.,* 121 Ala. 489. See also *L. & N. R. Co. v. Markee,* 103 Ala. 160. The court properly sustained the demurrer to this plea, under the principle stated in the two cases cited above.

At the time of the accident in which the injury com-

plained of was received, the plaintiff, Powell, was a conductor on the car of the Birmingham Railway & Electric Co. that was run into by a train of cars of the defendant company. The collision occurred at a crossing of the tracks of the two companies in a public street of the city of Birmingham. The undisputed evidence shows that the defendant company's agents or employes in charge of its train, were at the time making what is called a drop switch, of a number of its cars, which were loaded with coal; that a train of nine cars was detached or cut loose from the engine and permitted to run or roll of its own momentum down an incline to the said crossing; that this train of nine cars was detached from the engine at a point about six hundred and seventy feet from the crossing. The undisputed evidence further shows that the car of the Railway & Electric Co. of which the plaintiff had control as conductor, and which was run into by the defendant's train of cars which had been detached from the engine, stopped within about fifteen feet of the crossing of the two roads before proceeding to make the crossing, and after having so stopped, did proceed to cross, and in doing so stopped again upon the crossing in front of the approaching detached train of cars; that the stop of the electric car upon the crossing was due to a failure of the electric current just at that moment, and by reason of such failure of the electric current the said car was rendered helpless. The motorman of the electric car seeing the perilousness of his situation abandoned his post, when the plaintiff went to it and attempted to work the controller with the purpose of backing the car off the crossing, and while so engaged in this effort, the collision occurred producing his injury. The evidence fails to show that the plaintiff, conductor of the electric car, in making the stop before attempting to cross the tracks of the defendant company's road, made any effort to ascertain or know that the way was clear before proceeding to cross. The evidence shows that the stop was made within fifteen feet of the crossing, but as to any attempt on the part of the plaintiff to know that the

way was clear, it is perfectly silent; on the contrary, his own testimony is, that he was at the time collecting fare from a passenger. The evidence is in conflict as to the speed at which the detached train of cars of the defendant company was running at the time of the collision; the plaintiff's witnesses testifying to a speed of fifteen miles an hour, while the witnesses of the defendant testify to a speed of three or four miles an hour. There was also a conflict in the evidence as to whether there was any one on the detached cars, and as to whether there was a flagman at the crossing to give warning of the approach of the detached cars. The evidence of the plaintiff tended to show that there was no person on the detached cars, but that the same were running loose without any one in control, and, also, that there was no flagman at the crossing. The defendant's evidence tended to show that a brakeman was on the detached cars, and was at the time setting up the brakes to stop the cars, also, that there was a flagman at the crossing to guard against danger, and that such flagman gave warning to the motorman on the electric car not to come onto the crossing. There was also introduced in evidence an ordinance of the city of Birmingham making it a penal offense to make what is known as a flying or running switch, or drop switch, over, on, or across any street, avenue or alley in the city.

Counsel for appellant do not deny, but on the other hand concede, that the defendant company is chargeable with simple negligence in the acts and conduct of its employes in making the drop switch in violation of the city ordinance, which prohibited it, but they contend that the plaintiff was also guilty of negligence, which contributed proximately to his injury, in entering upon or attempting to make the crossing without first stopping and knowing that the way was clear before proceeding to cross, in obedience to the mandate of the statute.—§ 3441 of the Code.

That the provisions of section 3441 of the Code, imposing certain duties upon railroad companies, whose tracks cross each other, at such crossings, are applicable

16c

to railways using electricity as a motive power, seems to have been definitely settled by this court in the case of *L. & N. R. Co. v. Anchors, Admx.*, 114 Ala. 492. Approving the doctrine there laid down and applying the principle to the undisputed facts in this case, the plaintiff was guilty of negligence in his failure to exercise that high degree of care and diligence, which the law put upon him to *know* that the way was clear, before proceeding to cross with his car. For, as was said in the case of *Southern Railway Co. v. Bryan*, 125 Ala. 297, the duty of knowing the way to be clear before attempting to cross, is just as imperative as the duty of stopping within the distance designated in the statute, before attempting to make the crossing.

It is insisted that there was no evidence of intentional or wanton injury, and therefore the court erred in refusing the general charge requested by the defendant. The evidence of the plaintiff tended to show there was no brakeman or other person on the train of the nine loaded coal cars when the same were cut loose from the engine, to control them, and without anyone to manage or control the same, these were suffered to run down grade at a speed of fifteen miles an hour across the tracks of the electric car line and across a public street of the city. That the conductor of the defendant company's train, who cut the cars loose, was familiar with the crossing; "that they all knew that there were electric cars running out to Ensley and back over the crossing every few minutes in the day, and that cars were running over the same crossing from Birmingham to Avondale and back every few minutes during the day, and that there were no interlocking crossings or derailing switches at the crossing; that there were no safety appliances to prevent collisions at this crossing." This phase of the evidence made it proper to submit the question of wantonness to the jury. For under it, if believed, when taken in connection with the additional tendency, showing a willful violation of both the statute—§ 3441 of the Code—and the city ordinance above mentioned, the jury would have been authorized to infer from the

[Birmingham Southern Railroad Co. v. Powell.]

acts and conduct of the defendant's agents a reckless indifference to probable consequences of harm and injury to others, and that such acts were performed with a knowledge of facts and conditions, that rendered the, same greatly dangerous to the lives of others, and a probability that they would result injuriously. This degree of recklessness, with a conscious knowledge of its probable harmful consequences, constitutes that wantonness, which in law finds its equivalent in point of responsibility, to willful or intentional wrong. The tendencies of the plaintiff's evidence in this case, make a stronger case than that of *L. & N. R. Co. v. Webb,* 97 Ala. 308, where it was held that the question of wantonness was properly submitted to the jury. See also *A. G. S. R. R. Co. v. Anderson,* 109 Ala. 299. We do not find anything that is said in the cases cited by appellant's counsel, under the facts in those cases, inconsistent with what we have above stated as applicable to the facts which the evidence tended to show. The general charge requested by the defendant was properly refused. And likewise, the written charges requested, instructing the jury generally to find for the defendant on the theory of contributory negligence, pretermitting all inquiry as to wantonness under the evidence.

That portion of the oral charge of the court excepted to by the defendant, and here insisted on as error, is nothing more than a statement of the law as laid down in *R. & D. R. Co. v. Greenwood,* 99 Ala. 515; *Birmingham Min. R. R. Co. v. Jacobs,* 101 Ala. 149; 13 So. Rep. 411. Moreover, we find in the record among the written charges given by the court at the request of the defendant, a charge instructing the jury that the plaintiff was guilty of negligence in going on to the crossing before knowing the way to be clear. This was nothing more nor less than the general charge in favor of the defendant as to the defense of contributory negligence which was set up in answer to counts in simple negligence.

We find no reversible error in the record, and the judgment will be affirmed.